CITY OF JOHNSON CITY *et al.*, COMPLAINANTS, APPELLEES,
   *v.* CLINCHFIELD RAILROAD COMPANY *et al.*, DEFEND-
ANTS, APPELLANTS.

(*Knoxville,* September Term, 1931.)

Opinion filed November. 14, 1931.

Geo. N. Barnes, for complainants, appellees.

J. J. McLaughlin and Cox, Taylor & Epps, for defendants, appellants.

Mr. Justice Chambliss delivered the opinion of the Court.

The city filed this bill under the Declaratory Judgment Act seeking a construction, or interpretation, these terms having in common usage the same significance, of

334

Chap. 401 of the Private Acts of 1929, passed March 29th of that year, amending the charter of Johnson City, so as to extend the corporate limits to embrace certain adjacent territory, including property of the defendant railroad corporations. Two questions are presented by the pleadings, (1) whether or not the description of the territory proposed to be annexed is sufficiently definite; and, (2) whether or not the municipal taxes are collectible for the year 1930. The Chancellor held with the city on both propositions, and the defendants appeal.

The point raised for the defendants under the first head is that the description fails to set out a concluding call back to the point of beginning. The call begins at "Planted Rock, in the present corporation line, west of Ten Row; thence westerly with the property lines of the National Soldiers Home Reservation," etc. In the absence of a contrary showing it will be assumed that the point of beginning described as "Planted Rock," etc., is a known or ascertainable point. After setting out various meanderings, the description concludes, "thence a straight line North 35 degrees 45 minutes, west, over a hill to an intersection with the present corporation line." The complaint is that the words, "thence along the corporate line to the beginning," or their equivalent, are omitted.

As seen, the call begins at a point in the corporate line and likewise ends at a point in the corporate line. This is necessarily so if the purpose of the legislation is to be effected, since the Act expressly purports to "embrace and include therein," that is within the corporate boundaries, "the following additional territory." This purpose can be carried out only by annexing, or adding, the new territory to the old. The intention of

the Legislature seems clear and we concur with the Chancellor that the description is sufficiently definite.

The second point, more insistently urged for defendants, is that the effect of the language of the Act is to postpone the collection of municipal taxes in the new territory until 1931.

Section 3 of the Act, passed March 29, 1929, reads as follows:

"Be it further enacted, That those property owners and persons carrying on businesses in the additional territory taken into the municipality of Johnson City shall be assessable for taxes for municipal purposes at the next succeeding assessment period, after they are so taken in."

The insistence for the defendants under this head is that the Legislature used the language "shall be assessable for taxes . . . at the next assessment period" having in mind that under the law in force in 1929, the next period for assessment of *real estate* would be 1931, and that the Legislature so deferred the municipal taxing date in recognition of the assumed fact that those tax payers in the newly annexed territory could receive no appreciable benefits prior to that year. Does the language employed indicate a purpose to so defer the collection by the municipality of taxes from this territory? Or was it the purpose only to recognize the rule that all property is assessable for taxation as of the 10th of January of each year, which period had passed for the current year when this charter amendment was enacted?

The phrase "assessable for taxes" is commonly used to refer to the nature or the character of property, whether taxable or not, either in and of itself, or accord-

ing to the character in which it is held. It is the practical equivalent of the phrase "taxable property." That property which is assessable for taxes, is property subject to be taxed.

A definition of "Assess" given by Bouvier is "To tax;" and "assessment" is defined as "laying a tax." This is the broad and generally accepted meaning, although the authorities cited, and others, of course recognize that the words in strictness carry the distinctive meaning of fixing the value of property for taxation. But the one meaning includes the other, that is, the authority to tax property contemplates its assessment, and the authority to assess property implies authority to tax it. Quite commonly the technical distinction between assessing and taxing by a levy is disregarded.

The Legislature is assumed to use language in its commonly accepted sense, and we are of opinion that the language "shall be assessable for taxation" referred to the collection of taxes. But when? "At the next succeeding assessment period."

The property affected was not confined to real estate, which by law is assessed anew every two years and in the odd years only. But this class of property is subject to re-assessment annually according to any change, if any, in its *status,* either of ownership, or in the improvements thereon. And all personal property, privileges, and polls are regularly assessed for taxation annually, as of January the 10th. From these latter sources much of the municipal revenues are derived. It is thus obvious that the interpretation insisted on for the defendants would result in a confusing splitting of the tax collecting power of the municipality, a condition which

it is difficult to conceive the Legislature intended. By giving the term assessable, or assessment period or time its broader meaning of taxable period, this result would be avoided. The language used is "the next succeeding assessment period," not the next realty assessment period. Now, as shown, the next succeeding assessment period was 1930, not 1931, and the fact that at the next succeeding period one particular class of property would not be assessed does not take it out of the descriptive term, "next succeeding."

The argument based on the assumption that municipal benefits would not accrue until 1931 is not persuasive. The fact is that immediately upon the taking effect of the annexation, the new territory became entitled to police, fire and health protection, city school facilities, lighting, garbage removal, street and side walk improvements, etc., etc. Under the interpretation advanced this territory would have acquired the right to all these benefits in the spring of 1929 and throughout 1930 without charge, and would have been required to make no contribution to the municipality's burdens until the payment of taxes in the early months of 1932.

We find no error in the decree of the Chancellor and it must be affirmed.