ISLA M. KIRBY v. STOKES COUNTY BOARD OF EDUCATION.

(Filed 28 September, 1949.)

1. **State § 3—**

   Neither the State nor its administrative units may be sued in the absence of waiver or consent.

2. **Same: Schools § 8d—**

   G.S. 115-45 authorizes the maintenance of an action against a county board of education on a teacher's contract.

3. **Same: Statutes § 13—**

   The provisions of G.S. 115-45 authorizing suits against the respective county boards of education is not repealed in this respect by Chap. 562, Public Laws of 1933, or Chap. 358, Public Laws of 1939.  The School Machinery Act assigns duties to be performed by the respective county boards of education, particularly in regard to contracts of school teachers, and the intent of the Legislature to authorize actions against county boards of education in order to supply the necessity of mutuality of enforceable obligations is further strengthened by the fact that the original act, authorizing actions against the county boards, was brought forward in almost identical language in the codification.  G.S. 164-8.

**4. Contracts § 4—**

It is necessary to the mutuality of promises that each promise imposed a legal liability upon the promisor so as to give rise to an action for nominal damages at least upon its breach.

**5. Public Officers § 5b—**

The presumption is in favor of the regularity of acts of public officers with the burden on the party asserting irregularity to prove it.

**6. Schools § 8d—**

Plaintiff alleged a renewal contract to teach in a particular school of a district and alleged its breach because she was assigned to teach in another school in the district, but the written contract, incorporated in the complaint, disclosed only an agreement to teach in the public schools of the district. *Held:* The demurrer of the county board of education on the ground that the complaint failed to allege a cause of action was properly sustained.

**7. Schools §§ 8a, 8d: Contracts § 4—**

The county board of education offered plaintiff a contract to teach "in the public schools of the district." Plaintiff's written acceptance was to teach in a particular school of the district. *Held:* In plaintiff's action for breach of the contract for that she was assigned to teach in another school in the district, demurrer was properly sustained in the absence of allegation that the school authorities consented to the variation in the contract, since in such case there was no mutuality of agreement and therefore no contract to constitute the basis of the action.

**8. Master and Servant § 2a—**

A contract of employment must be definite and certain as to the nature and extent of the services to be performed, the compensation to be paid, and the person to whom and the place where the services are to be rendered.

**9. Schools § 8a—**

Notice of acceptance of a teacher contract or an extension thereof must be given within the time prescribed by statute. G.S. 115-354.

APPEAL by plaintiff from *Sink, J.,* at April Term, 1949, of STOKES.

Civil action to recover for alleged breach of alleged contract to teach in the Danbury school of the Stokes County Administrative Unit, heard upon demurrer *ore tenus* to the complaint entered by defendant.

The plaintiff's complaint is based upon the following series of events:

1. On 18 April, 1945, R. M. Green, Principal of the Danbury school, nominated plaintiff "for the position of elementary teacher in this school."

2. On 18 April, 1945, the Committee of District 1, through its chairman and secretary notified plaintiff by certificate that "at a meeting of the Committee, held on April 18, 1945," she "was elected to *teacher* in the

public school, for the white race, of this district for the ensuing year." On 11 May, 1945, this was approved by J. C. Carson, Superintendent.

3. On 16 May, 1945, plaintiff, as teacher, entered into a written "Contract for Instructional Service," which reads as follows:

### "CONTRACT FOR INSTRUCTIONAL SERVICE

"State of North Carolina
  Stokes County

"This agreement entered into between the governing authority of the Stokes County Administrative Unit and Isla M. Kirby, Principal, holding a........ ...... Certificate, No. ...... ......., now in force, in accordance with the provisions of the school law applicable thereto, which are hereby made a part of this contract,

"WITNESSETH:

"That said teacher, having been selected by the Public School Committee of District No. ........... in said administrative unit, agrees to teach in the public schools of said district for the ensuing school term, and to discharge faithfully all the duties imposed on teachers by the Public Laws of North Carolina. In consideration of this agreement, said governing authority promises to pay said person the sum of $........ ...... for each month of service. Of this amount the sum of................ ... . dollars per month for a period not exceeding eight months shall be paid from State funds, subject to the conditions that said amount paid from State funds shall not exceed the maximum set in the State Standard Salary Schedule fixed by the State Board of Education and the State School Commission, and within the allotment of funds as made to said administrative unit for instructional service.

"That said governing authority has authorized, in a regular or in a called meeting, its Secretary to execute this contract when such employment is approved in accordance with the provisions of the law.

ISLA M. KIRBY, Teacher<br>May 16, 1945

"Stokes Administrative Unit
  By: J. C. Carson, Secretary"

4. Later plaintiff was designated as principal of Danbury school, a position she held until the end of the school term in May 1947.

5. On 14 May, 1947, in accordance with the general school law of the State of North Carolina, the Superintendent of Public Instruction for Stokes County notified the plaintiff in writing that "in compliance with Section 115-35 A (should be 115-354) of the General Statutes of North

Carolina, as amended . . . your contract for employment in the Stokes Administrative Unit has been extended for another year following the close of the present school term."

6. On 30 May, 1947, plaintiff, in reply to the notice last above set out, gave to "Supt. J. C. Green of the Stokes Administrative Unit," "Notice of Acceptance" reading as follows: "In compliance with the law, Chapter 358, Public Laws of 1939, as amended, I hereby accept employment in the Danbury public school of Stokes Administrative Unit for the year 1947-1948 at a salary in accordance with State Standard Salary Schedule . . . etc."

7. On 26 August, 1947, C. E. Davis, Chairman Local School Committee, sent to plaintiff a written communication reading as follows:

"In view of the fact that we have succeeded in securing a man for Principal of the Danbury school, which is in accord with the request and wishes of the local patrons, it has become necessary, since Danbury is only entitled to five teachers, to assign you to teaching duty in Walnut Cove School . . . etc." The complaint alleges that there was no official authority for this notice.

8. Also on 26 August, 1947, plaintiff, through her husband, in person, notified R. M. Green, then Superintendent of Public Instruction for Stokes County, "that she would not teach in Walnut Cove in accordance with the letter signed by C. E. Davis, but would insist on the terms of her contract to teach in Danbury and that she was ready, able and willing to report for duty in accordance with said contract above set forth if and when they decided to allow her to do so."

9. On 25 August, plaintiff received a notice from R. M. Green, Superintendent of Public Instruction for Stokes County, "that the Stokes County schools will open for classes on Wednesday, September 3," and that she would be expected to report to her school on Tuesday morning, September 2nd, at nine o'clock for a local faculty meeting with her Principal," etc.

10. Thereupon on 2 September, 1947, plaintiff caused a letter to be addressed to R. M. Green, in which, among other things, she stated that she had given notice that she would not teach in Walnut Cove, and reiterated that she stood ready, able and willing to perform her part of the contract to teach in Danbury, etc.

Upon the foregoing, plaintiff alleges "that the failure to allow her to teach in Danbury as provided in her contract and as she has been doing for past three years is a breach on the part of the defendant of the contract above set out and to her great damage . . .," in the amount of salary she would have received had she taught in the Danbury school.

Defendant, Stokes County Board of Education, answered, and also entered in writing demurrer *ore tenus* to the complaint on the grounds:

"1. To the jurisdiction of the court for that it appears on the face of the complaint that this is an action against the State of North Carolina or an administrative agency of the State.

"2. For that the complaint fails to allege a cause of action."

Upon hearing on the demurrer, the Presiding Judge of Superior Court, being of opinion that demurrer should be sustained on both grounds, entered order to this effect on 12 April, 1949.

Plaintiff appeals therefrom to Supreme Court, and assigns error.

*Woltz & Barber for plaintiff, appellant.*

*R..J. Scott for defendant, appellee.*

WINBORNE, J.　This appeal presents for decision two questions:

1. May a teacher in the public schools of North Carolina maintain an action against a county board of education for alleged breach of her contract to teach in a county administrative unit?

2. If so, does the complaint of plaintiff state a cause of action for breach of contract to teach in a particular school in a district in which there are two or more schools?

I. The first question arises upon the ruling of the court below in sustaining the first ground of the demurrer, that is, that this is an action against the State of North Carolina, or one of its administrative agencies, and therefore is not maintainable.　Exception to the ruling is well taken.

It is a well settled principle of law that the sovereign may not be sued, either in its own courts or elsewhere, without its consent, and that "in the absence of consent or waiver, this immunity against suit is absolute and unqualified."　See *Schloss v. Highway Comm., ante,* 489, 53 S.E. 2d 517, where decisions of this Court on the subject are assembled in opinion by *Barnhill, J.*

And it may be conceded that a county board of education is an agency of the State in the operation and administration of the uniform public school system at State expense.　Chapter 115 of the General Statutes of North Carolina entitled "Education."　But as a part of the statute pertaining thereto the General Assembly has declared that "the county board of education shall be a body corporate by the name and style of 'The Board of Education of.................. ..County,' and by that name it shall hold school property belonging to the county, and it shall be capable of purchasing and holding real and personal property, of building and repairing school houses, of selling and transferring the same for school purposes, and *of prosecuting and defending suits for or against* the corporation." (Italics ours.)　G.S. 115-45.　Thus it appears that the General

Assembly not only has given corporate existence to the county board of education, but has consented that it, as a corporate entity, may sue and be sued.

It is contended, however, by appellee that this statute, G.S. 115-45, was enacted long before the enactment of Chapter 562 of Public Laws of 1933, by which a uniform statewide school system was established, and that under this act the county board of education was shorn of all administrative authority other than that which it gets under the School Machinery Act. P.L. 1939, Chapter 358.

In this connection it is true that an act in wording, substantially the same as that of G.S. 115-45, was enacted in 1901 (P.L. 1901, Ch. 4, Section 13), and re-enacted in 1903 (P.L. 1903, Ch. 435, Section 4), and as so enacted it has been brought forward as a part of the school law in subsequent codifications adopted by the General Assembly as Section 4121 of the Revisal of 1905, as Section 5402 of the Consolidated Statutes of 1919, and as Section 19 of Chapter 136 of Public Laws of 1923.

And while the General Assembly of 1933 in providing for the operation of a uniform system of schools in the whole State for a term of eight months, without the levy of any *ad valorem* tax therefor, declared nonexistent "all school districts, special tax, special charter or otherwise, as now constituted for school administration or for tax levying purposes," and relieved the county board of education of the responsibility for operating and maintaining the public schools of the county, it did not repeal the statute, then C.S. 5402, relating to the corporate existence of the county board of education, or its capability of prosecuting and defending suits for or against the corporation. Rather the General Assembly then imposed upon the board other duties and responsibilities in connection with the operation and maintenance of the uniform system of schools. To like effect are provisions of the School Machinery Act of 1939 (P.L. 1939, Ch. 358).

Moreover, the General Assembly of 1943, in codifying the statutes pertaining to education brought forward as G.S. 115-45 the provisions of the statute relating to corporate existence, and powers of the county boards of education in almost the identical language of the original act (P.L. 1901, Chap. 4, Section 13). And the General Assembly declared that "all provisions, chapters, subdivisions of chapter and sections contained in the General Statutes of North Carolina shall be in force from and after the thirty-first day of December one thousand nine hundred forty three." G.S. 164-8.

Thus it seems clear that the General Assembly intended to continue the existence of the county board of education as a corporate entity with power to prosecute and defend suits for or against the corporation.

Furthermore, the duties imposed upon the county board of education in the statute on "Education" (Chapter 115 of the General Statutes of North Carolina) and the part the county board of education is given in the operation of the school machinery make clear such legislative intent.

It is well here to review pertinent provisions of the school law. It is noted that when the General Assembly, in the Act of 1933 (P.L. 1933, Ch. 562, Section 4), declared all school districts nonexistent, as above stated, it created a State School Commission, and authorized and directed it in making provision for the operation of the schools, to classify each county as an administrative unit, and with the advice of the county boards of education to re-district each county, thereby making provision for such convenient number of school districts as the Commission may deem necessary for the economical administration and operation of the State school system, and to determine whether there shall be operated in such district an elementary or a union school. And these provisions are brought forward in the School Machinery Act of 1939.

Moreover, the school law, as codified and embodied in Chapter 115 of the General Statutes, contains these pertinent provisions:

1. "Each county of the State shall be classified as a county administrative unit, the schools of which, except in city administrative units, shall be under the general supervision and control of a county board of education with a county superintendent as the executive officer . . ." G.S. 115-8.

2. "The term 'district' as used in this chapter is hereby defined to mean any convenient territorial division or sub-division of a county, created for the purpose of maintaining within its boundaries one or more public schools . . ." G.S. 115-9.

3. "The board of education shall be a body corporate by the name and style of 'The Board of Education of....... ........... County,' and by that name . . . it shall be capable . . . of prosecuting and defending suits for or against the corporation." G.S. 115-45.

4. "The county board of education, subject to any paramount powers vested by law in the State board of education or any other authorized agency, shall have general control and supervision of all matters pertaining to the public schools in their respective counties, and they shall execute the school laws in their respective counties . . .,"—city administrative units being excluded from this section. G.S. 115-56.

5. "The county board of education shall elect a county superintendent of schools who shall be the administrative officer of the county administrative unit." G.S. 115-353.

6. "The county board of education shall elect and appoint school committees for each of the several districts in their counties . . . The district committees shall elect the principals for the schools of the districts,

subject to the approval of the county superintendent of schools and the county board of education. The principals of the district shall nominate and the district committees shall elect the teachers for all the schools of the district, subject to the approval of the County Superintendent of Schools and the county board of education. The distribution of the teachers between the several schools of the district shall be subject to the approval of the county board of education. In the event the local school authorities herein provided for are unable to agree upon the nomination and election of teachers, the county board of education shall select the teacher or teachers, which selection shall be final for the ensuing school term. All principals and teachers shall enter into a written contract upon forms to be furnished by the state superintendent of public instruction before becoming eligible to receive any payment from state funds. It shall be the duty of the county board of education in a county administrative unit . . . to cause written contracts on forms to be furnished by the state to be executed by all teachers and principals elected under the provisions of this sub-chapter before any salary vouchers shall be paid . . ." G.S. 115-354.

7. While "the state board of education shall fix and determine a state standard salary schedule for teachers, principals and superintendents, which shall be the maximum standard state salaries to be paid from funds to the teachers, principals and superintendents," . . . "all contracts with teachers and principals shall be made locally by the county board of education . . . Provided, however, that the compensation contracted to be paid out of state funds to any teacher, principal, or superintendent shall be within the maximum salary limit to be fixed by the state board of education as above provided, and within the allotment of funds as made to the administrative unit for the item of instructional salaries . . ." G.S. 115-359.

Thus it is seen that the county board of education is assigned duties to perform in the machinery for the operation of the public schools of a county administrative unit, and is required to make contracts with teachers,—within the salary limits prescribed.

A contract is an agreement between two or more persons or parties on sufficient consideration to do or refrain from doing a particular act. *Belk's Dept. Store v. Ins. Co.*, 208 N.C. 267, 180 S.E. 63.

"One of the essential elements of every contract is mutuality of agreement." *Croom v. Lumber Co.*, 182 N.C. 217, 108 S.E. 735. And "mutuality of promises means that the promises to be enforceable must each impose a legal liability upon the promisor. Each promise then becomes a consideration for the other." *Wellington v. Tent Co.*, 196 N.C. 748, 147 S.E. 13.

And generally a cause of action for damages, at least for nominal damages, arises upon the breach of a contract. Nominal damages are recoverable where there is no proof of actual damage. 12 Am. Jur. 965, Contracts, Sec. 388.

In the light of these principles of law applied to the provisions of the school law hereinabove recited, it will be presumed that the General Assembly, in requiring a teacher or principal to execute a written contract "before becoming eligible to receive any payment from state funds," intended to make available to the teacher and the principal a remedy against the county board of education for the enforcement of the contract, or for its breach by the county board of education,—the agency designated and required to make the contract.

II. The assignment of error based upon exception to the ruling of the court below in sustaining the demurrer on the ground that the complaint fails to state a cause of action is untenable for two reasons: The first is that the documents incorporated in the allegations of the complaint fail to show that plaintiff had a contract to teach exclusively in the Danbury school. While she alleges that she had such contract, the notice of her election from the "Committee of District No. 1," made a part of the complaint, shows that in April, 1945, she was "elected to teach in the public school, of the white race, of this district for the ensuing year." And in the contract of 16 May, 1945, which she signed, she agreed "to teach in the public schools of said district for the ensuing school term." And it further appears that in August, 1947, the chairman of the local school committee gave her notice that it had become necessary to assign her to teaching duty in the Walnut Cove school. Thus, since the school committee exercised authority in respect to both the Danbury school and the Walnut Cove school, it may be inferred, in the absence of any allegation to the contrary, that these schools are in the same district. Indeed, defendant avers in its answer that District No. 1 in the Stokes Administrative Unit is composed of the Walnut Cove and Danbury schools.

The presumption of law is in favor of the regularity of the conduct of the authorities, and the burden is upon the plaintiff to show the contrary. *Quinn v. Lattimore,* 120 N.C. 426, 26 S.E. 638; 43 Am. Jur. 254, Public Officers, Sec. 511; 31 C.J.S. 799, Evidence, Sec. 146.

Therefore, while plaintiff alleges she had taught in the Danbury school for three years, her contract obligated her "to teach in the public schools of said district." But plaintiff contends that in response to the notice of 14 May, 1947, that her contract for employment in the Stokes unit had been extended for another year following the close of the then present school term, she notified the Superintendent of the Stokes Administrative Unit on 30 May, 1947, that she accepted employment in the Danbury public school of Stokes Administrative Unit for the year 1947-

1948, etc. But there is no allegation that the school authorities consented to this variation from the terms of the contract of May, 1945, which she alleges was so extended.

In this connection, it is a rule of law that "One of the essential elements of every contract is mutuality of agreement. There must be neither doubt nor difference between the parties. They must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is not settled, or no mode agreed on by which they may be settled, there is no agreement. A contract for service must be certain and definite as to the nature and extent of the service to be performed, the place where, and the person to whom it is to be rendered, and the compensation to be paid, or it will not be enforced." *Croom v. Lumber Co., supra.* See also *Dodds v. Trust Co.,* 205 N.C. 153, 170 S.E. 652; *Sides v. Tidwell,* 216 N.C. 480, 5 S.E. 2d 316; *Richardson v. Storage Co.,* 223 N.C. 344, 26 S.E. 2d 897.

The second reason why the complaint fails to state a cause of action is that plaintiff did not give notice of her acceptance of the extension of her contract within the time prescribed by the statute, G.S. 115-354, as amended by Section 5 of Chapter 970 of Laws of 1945,—effective on ratification 20 March, 1945. In this section it is provided that the contract of a teacher or of a principal shall continue from year to year until said teacher or principal is notified as provided in G.S. 115-359, of his or her rejection. This provision is subject to the proviso "that such teacher or principal shall give notice to the superintendent of schools of the administrative unit in which said teacher or principal is employed, within ten days after notice of re-election, of his or her acceptance of employment for the following year." Prior to the amendment of 1945 it was required that the notice be given "within ten days after the close of school." In this connection, the complaint alleges that the Superintendent notified plaintiff on 14 May, 1947, and that her notice of acceptance was dated 30 May, 1947, which was more than ten days after notice of her re-election. By this lapse of time plaintiff lost the benefit of the provision of the statute extending her contract for another school year.

Notice is taken of the allegation in the complaint to the effect that the Chairman of the Local Committee was not authorized to transfer or to give notice of transfer of plaintiff, as a teacher in the Danbury school, to the Walnut Cove school. But this does not avail plaintiff any benefit, since she fails to allege a contract to teach exclusively in the Danbury school.

Hence, the judgment below is

Affirmed.