ALBEMARLE ELECTRIC MEMBERSHIP CORPORATION, BLUE RIDGE ELECTRIC MEMBERSHIP CORPORATION, BLUE RIDGE MOUNTAIN ELECTRIC MEMBERSHIP CORPORATION, BRUNSWICK ELECTRIC MEMBERSHIP CORPORATION, CARTERET-CRAVEN ELECTRIC MEMBERSHIP CORPORATION, CENTRAL ELECTRIC MEMBERSHIP CORPORATION, CRESCENT ELECTRIC MEMBERSHIP CORPORATION, DAVIDSON ELECTRIC MEMBERSHIP CORPORATION, JONES-ONSLOW ELECTRIC MEMBERSHIP CORPORATION, MOUNTAIN ELECTRIC COOPERATIVE, PAMLICO-BEAUFORT ELECTRIC MEMBERSHIP CORPORATION, PIEDMONT ELECTRIC MEMBERSHIP CORPORATION, ROANOKE ELECTRIC MEMBERSHIP CORPORATION, RUTHERFORD ELECTRIC MEMBERSHIP CORPORATION, SOUTH RIVER ELECTRIC MEMBERSHIP CORPORATION, SURRY-YADKIN ELECTRIC MEMBERSHIP CORPORATION, TRI-STATE ELECTRIC COOPERATIVE, INC., AND WAKE ELECTRIC MEMBERSHIP CORPORATION v. THOMAS W. ALEXANDER, WILLIAM C. STOKES, JOHN WINFIELD, CEDRIC D. LANGSTON, HUDSON C. STANSBURY, ACTING AS THE NORTH CAROLINA STATE BOARD OF ASSESSMENT

No. 7

(Filed 13 December 1972)

**1. Taxation § 25— electric membership corporation — valuation of property for taxation purposes — showing of excessiveness**

In order to obtain relief from valuations placed upon their property for purposes of taxation by the State Board of Assessment, appellant electric membership corporations must show that the methods used in determining true value were illegal and arbitrary and that appellants were substantially injured by a resulting excessive valuation of their property.

**2. Taxation § 25— valuation of property — uniform appraisal standard**

The primary consideration in assessing an ad valorem tax is property valuation, and the North Carolina General Assembly has adopted "market value" or "true value in money" as the uniform appraisal standard for valuation of property for tax purposes. G.S. 105-294 (now G.S. 105-283).

**3. Public Officers § 8— State Board of Assessment — presumptions as to official acts**

Members of the State Board of Assessment are public officers, and the Board's official acts are presumed to be made in good faith and in accordance with law.

**4. Taxation § 25— State Board of Assessment — court intervention in assessment determinations**

Duties of the State Board of Assessment are quasi-judicial in nature and require the exercise of judgment and discretion, and it

is only when the actions of the Board are found to be arbitrary and capricious that courts will interfere with tax assessments because of asserted violations of the due process clause.

**5. Taxation § 25— property valuation — overcoming presumption of correctness of State Board of Assessment**

   Appellant electric membership corporations may overcome the presumed correctness of the State Board of Assessment's valuation placed upon their properties only upon showing by competent evidence that the valuation was unreasonably high.

**6. Taxation § 25— property valuation — local tax listings— insufficiency of evidence to upset Board's valuation**

   Where the only evidence offered by appellants as to the value of their property was their local tax listings, such declarations alone were of insufficient probative force to overcome the presumption of correctness and regularity accompanying the actions of the State Board of Assessment in the valuation of appellants' property.

**7. Taxation § 25— property valuation — insufficiency of evidence to upset Board's valuation**

   Where appellants failed to offer sufficient evidence of probative value showing the true value of their property, the value set by the State Board of Assessment must stand.

APPEAL by petitioners from *Braswell, J.,* First January Regular Civil Term, 1972, WAKE Superior Court.

Each appellant is an electric membership corporation organized and operating under Chapter 117 of the General Statutes of North Carolina or domesticated and doing business in North Carolina pursuant to Article III of that Chapter. Since 1 January 1967, appellants have been subject to ad valorem taxation by the various local governmental units of the State, and their property valuations have been subject to review and excess valuation determination, if so found, by the State Board of Assessment.

All references to statutes contained in Chapter 105 of the General Statutes refer to the applicable provisions prior to their revision or recodification by the 1971 General Assembly.

Acting in accordance with G.S. 105-355, each appellant duly filed information statements with the State Board of Assessment for the year 1970. From the information furnished, the Board valued and assessed the property of each appellant, taking into account the following factors: (1) plant and equipment cost. A figure represented by this factor was arrived at by

averaging depreciated plant and equipment, plus materials and supplies, as of 31 December 1968 and 1969 after reducing percentages of idle services; (2) capitalized income. A capitalization rate of 6% for the two-year (1968 and 1969) average of patronage capital and operating margins before deduction of interest on long-term debt was applied in determining this factor; and (3) equity and debt. The figure representing this factor was calculated by totaling amounts of membership fees, patronage capital, operating margins from prior years, contributions in aid of construction, operating margins from the current year and the actual long-term mortgage debt excluding book dollars relating to nonoperating properties.

After averaging the figures, the Board arrived at the fair market value of each appellant by averaging the three factors and reducing the result by 5%. Taking this value, the Board deducted from it the total value of all real and personal property listed by each appellant in each county in which it had property. The amount remaining would then have been taxed by the proper counties, but the appellants protested and sought a formal hearing on the question of value.

Pursuant to G.S. 105-357 a formal hearing was held before the State Board of Assessment. The Board found facts consistent with those above stated, and concluded:

"1. The burden of proof is upon the protestants to establish that fair market value is less than that found by the Board.

2. By offering no evidence of fair market value, the protestants have failed to carry their burden of proof."

The Board thereupon ordered "that the tentative valuations heretofore set by the State Board of Assessment with respect to the nineteen protesting electric membership corporations for the year 1970 become final."

Judge Braswell affirmed the decision of the Board, and appellants appealed to the North Carolina Court of Appeals. We allowed the petition for writ of certiorari prior to determination by the Court of Appeals on 2 May 1972 pursuant to G.S. 7A-31(b).

*Robert Morgan, Attorney General by Myron C. Banks, Assistant Attorney General Attorneys for respondents.*

*Crisp and Bolch by Thomas J. Bolch Attorneys for petitioner-appellant.*

BRANCH, Justice.

Appellants contend the State Board of Assessment employed an erroneous method in valuing their property which resulted in their property being valued substantially in excess of its true money value, thereby imposing a confiscatory tax in violation of § 17, Art. 1 (now § 19, Art. 1) of the North Carolina Constitution and the Fifth and Fourteenth Amendments of the United States Constitution.

The provisions of G.S. 105-271, et seq. constitute the State Board of Assessment appraisers and assessors of the property of public utilities and electric membership corporations for the purpose of ad valorem taxation.

Black's Law Dictionary defines the word "assess" as follows: "In connection with taxation of property, [assess] means to make a valuation and appraisal of property, usually in connection with listing of property liable to taxation, and implies the exercise of discretion on the part of officials charged with duty of assessing, including the listing or inventory of property involved, determination of extent of physical property, and placing of a value thereon. *Montana-Dakota Power Co. v. Weeks,* D.C.N.D., 8 F. Supp. 935, 936. To tax. *Johnson City v. Clinchfield R. Co.,* 163 Tenn. 332, 43 S.W. 2d 386, 387."

G.S. 105-358, (since revised and recodified as G.S. 105-336) as applied to appellants, specifically provided for the ascertainment of true value of their property by adding the equity (value of capital) and the debt (aggregate amounts of any mortgage or mortgages).

Appellants argue that the Board should have considered the *value* of their respective mortgage indebtedness rather than the *amount* of such mortgage indebtednesses.

In this connection the Board heard the testimony of Mr. Gwyn Price, Chairman of North Carolina's Rural Electric Authority from its inception to his retirement in 1972, who testified: "I don't think the employment by the Board of the

REA mortgage debt factor is a proper method to use in arriving at these values. *I think that it should be supplemented, Mr. Chairman, with other data and with other information; particularly do I think it should be supplemented with some rate of return."* (Our emphasis.)

Harry B. Caldwell, an outstanding agricultural leader and the Executive Vice-President of the Farmers Cooperative Council, outlined the history and philosophy of the REA. He questioned the wisdom of using the mortgage indebtedness as a factor in determining true value.

The witness Clyde T. Ellis, Manager Emeritus of the National Rural Electric Cooperative Association, stated that in his opinion the use of the mortgage debt of the electric membership corporations was not valid as a fair and proper base for the computation of true value of property.

W. R. Underhill, a Utilities Evaluation Analyst for the State Board of Assessment, stated that "if we could have determined the market value of REA debt and the market value of the remaining equity, that would have been the market value, but we feel that it's impossible to do so."

Mr. Joe Mayes, a partner of Southern Engineering Company, testified that his experience in evaluating electric membership property was limited to forced sales situations. He recommended depreciated book value plus materials and supplies factors for non-revenue producing items and capitalized earnings as the major components of a better formula for ascertaining the true value. This formula, he suggested, should be averaged over a period of time greater than the two-year period employed by the Board in valuing appellants' property. In his opinion mortgage indebtedness was a "skew factor."

REA was created to meet a need that investor-owned utilities could not profitably meet. The Congress adopted a policy which allowed 2% interest loans to be granted upon security which would not have attracted private capital. An electric membership corporation is a non-profit service organization created to carry central electric service to sparsely settled rural areas. Considering these factors with the available market, if there should be a sale of an electric membership corporation, it becomes fairly obvious that there is firm basis for appellants' contention that generally the amount of the

mortgage debt and equity of a membership corporation may in many cases exceed the value of the mortgage debt and equity.

We do not, however, intend to say that the statutory formula was without any value in determining the true value of appellants' property. We do think the Board wisely followed the procedure approved by the witness Gwyn Price and used other factors widely recognized as proper in determining true value of similar property. Further, we note that after the Board averaged the three factors they reduced the result by 5%. Nevertheless, appellants attack the additional factors used by the Board to supplement the statutory directions for determining true cash value of the membership property.

They first contend that the capitalization of their earnings at less than 7-8% was erroneous.

We consider cases from other jurisdictions which are pertinent to this contention.

In the case of *Chicago and North Western Railway Co. v. Prentis,* _____ Iowa _____, 161 N.W. 2d 84, the tax commission had for several years been capitalizing income at the rate of 6%. Plaintiff objected to the use of this rate and offered witnesses who testified that the proper percentage should be 6½%, 7½% and 8%. The court held that the taxpayer's burden is not met by showing a difference of opinion, but that the taxpayer must show the action of the commission in following its long established rate was arbitrary and capricious. Consequently, the 6% rate was approved.

Another jurisdiction considered the same question in *Pleasant v. Missouri-Kansas-Texas R. Co.,* 66 F. 2d 842 (10th Cir. 1933). There the court stated the tax commission capitalized the taxpayers' net revenues on a 6% basis, and the master had used 7%. The court held that both percentages were in the "zone of reason," and that there was no error in the use of the 6% rate.

In this connection the witness Underhill testified that the Board in the past had adhered to the figure of 6% in calculating utility property until the rise in interest rates. Recently, the Board has used higher capitalization rates for higher risk companies but retained the 6% rate for determining value of properties belonging to electric membership corporations.

The witness Mayes testified he would have employed a figure of 7 or 8% in capitalizing the earnings. Referring to these percentages he further testified:

"I would have to put many things in and weigh them and this would be my judgment and I think this is a judgment figure. I am convinced in my own mind that *this is generally a judgment figure.*" (Our emphasis.)

Appellants seek to support their argument for a higher capitalization rate by offering evidence that the North Carolina Utilities Commission has approved a rate of return of 7.75% for Duke Power Company. Duke Power Company differs from appellants in that it is investor owned, seeks to make a profit for its investors, must obtain its financing in the "money markets" and there pay such interest rates as prevailing circumstances require. Recognizing the difference between investor-owned companies and electric membership corporations, we find little probative force in the evidence that the North Carolina Utilities Commission allowed Duke Power Company a 7.75% rate of return.

Here the evidence discloses that the Board has historically used the figure of 6% in determining true value of the property owned by electric membership corporations, and that the determination of the rate is a matter of judgment. We find nothing in the record which indicates that the Board departed from the "zone of reason" or acted arbitrarily in adopting the 6% capitalization rate.

[1] We have briefly outlined some of appellants' major contentions asserting error in the method used by the Board to find the true value of appellants' property. We do not deem it necessary to discuss all of these contentions since an erroneous method of determination, standing alone, will not be decisive of this appeal. In order to obtain relief appellants must show that the methods used in determining true value were illegal and arbitrary, *and* that appellants were substantially injured by a resulting excessive valuation of their property.

[2] The primary consideration in assessing an ad valorem tax is property valuation. The fundamental rule of valuation is actual market or fair cash value. 51 Am. Jur. Taxation, § 696; 84 C.J.S. Taxation, § 410. The North Carolina General Assembly has adopted "market value" or "true value in money" as the

uniform appraisal standard for valuation of property for tax purposes. G.S. 105-294 (now G.S. 105-283).

[3]   The members of the State Board of Assessment are public officers, and the Board's official acts are presumed to be made in good faith and in accordance with law. The burden is upon the party asserting otherwise to overcome such presumptions by competent evidence to the contrary. Every reasonable intendment will be made in support of these presumptions. *Housing Authority v. Wooten,* 257 N.C. 358, 126 S.E. 2d 101; *Huntley v. Potter,* 255 N.C. 619, 122 S.E. 2d 681; *Kirby v. Board of Education,* 230 N.C. 619, 55 S.E. 2d 322; 51 Am. Jur. Taxation, § 655.

[4]   The duties of the State Board of Assessment are quasi-judicial in nature and require the exercise of judgment and discretion. 51 Am. Jur. Taxation, § 663. It is only when the actions of the Board are found to be arbitrary and capricious that courts will interfere with tax assessments because of asserted violations of the due process clause. *Great Northern Ry. Co. v. Weeks,* 297 U.S. 135, 56 S.Ct. 426, 80 L.Ed. 532; *Hotel Company v. Morris,* 205 N.C. 484, 171 S.E. 779; *Alaska Land Company v. King County,* 77 Wash. 2d 247, 461 P. 2d 339; 51 Am. Jur. Taxation, § 771. G.S. 143-315, in defining the scope of review and power of the court in disposing of decisions of certain administrative agencies (including the State Board of Assessment), provides:

> "The court may affirm the decision of the agency or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
>
> (1)  In violation of constitutional provisions; or
>
> (2)  In excess of the statutory authority or jurisdiction of the agency; or
>
> (3)  Made upon unlawful procedure; or
>
> (4)  Affected by other error of law; or
>
> (5)  Unsupported by competent, material, and substantial evidence in view of the entire record as submitted; or
>
> (6)  Arbitrary or capricious."

G.S. 143-307 provides that "any person who is aggrieved by a final administrative decision . . . is entitled to judicial review . . . " This court has defined a person aggrieved as one "adversely or injuriously affected; damnified, having a grievance, having suffered a loss or injury, or injured; . . . " *In re Assessment of Sales Tax*, 259 N.C. 589, 131 S.E. 2d 441.

[5] There is an abundance of authority from other jurisdictions to the effect that appellants cannot obtain relief by showing only an arbitrary or illegal method of valuation, and that they may overcome the presumed correctness of a taxing authority's assessment only upon showing by competent evidence that the assessment substantially exceeds the true value of the property. *Majestic Great West. Sav. & Loan Ass'n v. Reale*, 30 Colo. App. 564, 499 P. 2d 644; *Abbot v. State Tax Commission*, 88 Idaho 200, 398 P. 2d 221; *State Board of Tax Comrs. v. Traylor*, 141 Ind. App. 324, 288 N.E. 2d 46; Appeal of Kresge-Newark, Inc., 30 N.J. Super. 489, 105 A. 2d 12; *City of San Marcos v. Zimmerman*, 361 S.W. 2d 929 (Tex. Civ. App. 1962); *Ozette Ry. Co. v. Grays Harbor County*, 16 Wash. 2d 459, 133 P. 2d 983. Simply stated, appellants must show that the valuation was unreasonably high.

[6] The only evidence offered by appellants as to the value of their property was their local tax listings. We do not think these declarations alone have sufficient probative force to overcome the presumption of correctness and regularity accompanying the Board's actions. The State Board of Assessment is by statute given the power to value appellants' property. Implicit in this power is the power to reject a value declared by the taxpayer. The futility of allowing a taxpayer to fix the final value of his property for taxation is so apparent it decries discussion. See, Listing and Assessing of Property for County and City Taxes in North Carolina, Brandis, p. 108; *Rodeo Telephone Mem. Corp. v. County of Greeley*, 181 Neb. 492, 149 N.W. 2d 357.

The case of *Newberry Mills v. Dawkins*, _____ S.C. _____, 190 S.E. 2d 503 (decided 6 July 1972) is closely analogous to instant case. There the plaintiff filed its information return with the South Carolina Tax Commission pursuant to applicable South Carolina statutes. Plaintiff then protested the Commission's valuation and assessment of its property and, after exhausting its administrative remedies, paid the taxes under protest. Plaintiff brought an action in the Court of Common

Pleas to recover the taxes paid, contending, *inter alia,* that the Commission's method of valuation made the assessment void. Plaintiff appealed from an adverse ruling of the Court of Common Pleas. The South Carolina Supreme Court affirmed the lower court stating, in part:

> "The second question to be decided deals with the Commission's method of valuation, which plaintiff contends is constitutionally impermissible. Briefly stated, the Tax Commission uses the original cost of the property and carries that figure forward each year as the fair market value of the property. As items of equipment or taxable property are replaced, there is no change in the valuation of the property, the replacement factor being somewhat of an allowance for depreciation and obsolescence. The plaintiff asserts that this results in a patent failure to ascertain fair market value and that because of this the resulting assessment is void.

> Such argument is not without appeal in view of constitutional provisions set forth above, and in view of Code Section 65-1648, which requires all property to be valued 'at its true value in money' for taxation. Nonetheless, plaintiff's exceptions cannot be sustained. . . .

> Plaintiff's coveted relief hinges upon the allegation that the valuation of its property was invalid since it was not the constitutionally—and statutorily—required *actual* or *true* valuation. It was therefore incumbent upon plaintiff to prove to the administrative bodies below that the Property Tax Division's valuation of its property was not equivalent to the actual value or true value of the property. This plaintiff has failed to do. No evidence of the actual value of (sic) fair market value of plaintiff's property was presented to the Tax Commission. Plaintiff failed to establish that the 'book value' method did not produce the proper valuation of its property. . . .

> Of more importance than the method used in determining the valuation is the result reached. In the absence of proof to the Commission of some other 'actual' value, the value set by the Commission must stand. This action in effect asked the lower court to review the action of the Commission and the Tax Board of Review. In a sense it is an appeal. If a valuation is incorrect, then the actual value

should be proven to that body charged by law with the duty of determining the value."

[7]   Appellants have failed to offer sufficient evidence of probative value showing the true value of their property. The value set by the State Board of Assessment must stand in absence of proof of other value.

There was ample record evidence to support the findings of the Board, the conclusions reached and the order entered.

Judge Braswell's judgment correctly stated:

"The findings of fact and decision of the Respondents herein are supported by competent, material and substantial evidence in view of the entire record as submitted and the substantial rights of the Petitioners have not been prejudiced; and said decision is in compliance with applicable constitutional provisions, within the statutory authority and jurisdiction of the Respondents and pursuant to law and lawful procedure, is neither arbitrary nor capricious and upon the entire record the decision herein judicially reviewed should be affirmed."

The judgment entered by Judge E. Maurice Braswell under date of 17 January 1972 is

Affirmed.