IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
July 12, 2005 Session


# CMH HOMES, INC. V. DARRELL McEACHRON


## Direct Appeal from the Circuit Court for Blount County
No. E-19603    Hon. W. Dale Young, Circuit Judge

---

### No. E2004-02189-COA-R3-CV  - FILED SEPTEMBER 29, 2005

---


Plaintiff purchased real property at delinquent tax sale and in a declaratory judgment action the Trial Court held the sale included a mobile home located on the land.  On appeal, we reverse.


**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Reversed.**


HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the court, in which CHARLES D. SUSANO, JR., J., and SHARON G. LEE, J., joined.

Anthony R. Steele, Knoxville, Tennessee, for appellant.

L. Lee Kull, Maryville, Tennessee, for appellee.


### OPINION


The dispositive issue in this action is the extent of property transferred at a delinquent tax sale.

Plaintiff filed a complaint as a declaratory judgment action, averring that certain real property owned by Edith K. Ferguson was sold in a Blount County delinquent tax sale, and that he purchased the property at the tax sale for $3,000.00.  The complaint also asserted that defendant, which held a deed of trust to the mobile home on the property, had notice of the sale, and that defendant failed to pay the delinquent taxes and did not exercise its right of redemption.  He asked

that the Court declare that defendants had no interest of any kind in the property and to enjoin the defendants from claiming any interest in the property.

Defendant in its Answer raised two affirmative defenses: that plaintiff failed to state a claim upon which relief could be granted with respect to the mobile home situated on the real property at issue; and plaintiff had no right, title, or interest in the 1996 Clayton Deerfield mobile home located on the property. In support of this defendant attached two exhibits: a Property Owners Agreement, entered into between Edith K. Ferguson and defendant joined by Linda K. Payne and Vanderbilt Mortgage. The Agreement states that "The manufactured home is personal property and shall remain personal property, even though it may become affixed to the real estate. . . . Dealer or subsequent holders of the Retail Contract may remove the manufactured home whenever it is necessary, to protect their security interest and the right of entry for such purpose is herein granted." The Agreement also states that it "shall also bind and benefit the respective heirs, executors, administrators, legal representatives, successors and assigns of the Lessor." The Agreement describes Linda Payne as the "home buyer," Edith Ferguson as the "property owner," Clayton Homes as the "dealer," and Vanderbilt Mortgage as the "lender." Also attached was a copy of the certificate of title to the home, which lists Linda Payne as the registered owner and Vanderbilt Mortgage as the first lien holder.

Defendant's Counterclaim averred that Payne entered into a "Retail Installment Contract and Security Agreement" with defendant for the purchase of a mobile home, and defendant further averred that the real property owned by Edith Ferguson was sold at the delinquent tax sale, but the sale neither referenced nor described the mobile home of Linda Payne.

Defendant filed a Motion for Summary Judgment. The supporting statement of material facts listed facts that had already been admitted or asserted by both parties, and the thrust of defendant's brief in support of the Motion was the argument that "while a lien against the real property for taxes assessed relative to the value of the mobile home may arise, the taxing authority's lien does not extend to or cover the mobile home." Defendant also filed an Affidavit of Brandy Swaggerty, which states that Swaggerty is the Legal Coordinator for defendant and a custodian of records with personal knowledge of the account of Linda Payne, that Linda Payne purchased the mobile home at issue, a lien in favor of Vanderbilt Mortgage and Finance was perfected and recorded on the certificate of title for the mobile home, and the Property Owners Agreement provided that the mobile home was to remain personal property even though it may become affixed to the real estate.

Plaintiff responded to defendant's Motion for Summary Judgment and filed his own Motion for Summary Judgment. In essence, plaintiff's Memorandum of Law argued that the mobile home became subject to the first priority tax lien the moment the mobile home was attached to the real estate, as defined in Tennessee Code Annotated §67-5-802(a)(1), and assessed as an improvement to the real estate.
.

Responding to the Motions for Summary Judgment, the Trial Court filed a Memorandum stating that plaintiff's Motion was well taken and defendant's Motion was not. The

Trial Judge then filed a Memorandum Opinion, making several fact findings, and then went on to hold that the tax lien extended to both the mobile home and the underlying real property. Defendant has appealed to this Court, insisting that it was entitled to a summary judgment, rather than plaintiff.

The standard of review of a summary judgment determination is *de novo* without any presumption of the correctness of the Trial Court's judgment." *Guy v. Mutual of Omaha Ins. Co.*, 79 S.W.3d 528, 534 (Tenn. 2002). In this case, the material facts are not in dispute. Linda Payne purchased the mobile home at issue, and granted a security interest in the mobile home, which was perfected by a notation on the mobile home's certificate of title. The mobile home was assessed as an improvement to the real property owned by Edith Ferguson. The property owned by Edith Ferguson was sold in a delinquent tax sale, and defendant was provided with notice of the sale, but did not exercise any right of redemption. The plaintiff purchased the real property at the tax sale and was given a Clerk & Master's Deed.

The issue before us is whether the Trial Court's legal conclusion was correct.

The basis of the dispute between the parties concerns the meaning and application of Tenn. Code Ann. § 67-5-802(a)(1) which states in part:

> Any movable structure and appurtenance which is attached to real property by virtue of being on a foundation, or being underpinned, or connected with any one (1) utility service, such as electricity, natural gas, water, or telephone, shall be assessed for tax purposes as real property as an improvement to the land where located . . . .

Defendant argues this statute does not convert a mobile home into real property; rather, the statute means that a mobile home will be treated as if it were real property for the purpose of calculating the tax obligation imposed on the owner of the underlying land. Thus, if the taxes on the underlying land are not paid, the mobile home will not necessarily be sold with the land. Plaintiff, however, argues that this statute does convert the mobile home into real estate, and if the taxes on the underlying land are not paid the mobile home will be sold with the land.

In interpreting statutes, the legislative intent must be determined from the plain language of the statute, in the context of the entire statute, without any forced or subtle construction which would extend or limit the statute's meaning. *Nat. Gas Distribs., Inc. v. State*, 804 S.W.2d 66, 67 (Tenn. 1991). More specifically with regard to tax statutes, the Supreme Court has stated "[d]oubts as to the application of tax statutes will be resolved in favor of the citizen and tax statutes will be construed most strongly against the State." *Id.*

The section of the statute which is at the heart of the controversy is Tenn. Code Ann. § 67-5-802(a)(1), which was previously quoted in part. Determining the meaning of the phrases "movable structure" and "shall be assessed" are helpful in determining the statute's intent. "Movable structures" is a class which included mobile homes. Tenn. Code Ann. § 67-5-501(6). The term "assess" has two meanings: (1) "to value for taxation" and (2) "to determine and impose a tax".

*Texas Co. V. Fort*, 80 S.W.2d 658, 660 (Tenn. 1934). "But the one meaning includes the other, that is, the authority to tax property contemplates its assessment, and the authority to assess property implies authority to tax it." *Johnson v. Clinchfield R.R.*, 43 S.W.2d 386, 386 (Tenn. 1931). Based on the context in which "assessed" is placed, the term is used in the sense of valuing property for taxation. In the quoted language, the term "assessed" could be replaced with "valued" without disrupting the flow of the statute's language. However, the fact that mobile homes are being assessed implies that they are being taxed.

The phrase "shall be assessed" is also used in the immediately preceding section, which states in part "Residential property **shall be assessed** at twenty-five percent (25%) of its value . . . ." Tenn. Code Ann. § 67-5-801(a)(3). (Emphasis added). Here "shall be assessed" is used in the sense of determining a value, more specifically a taxable value, i.e., the percentage of the property's true value which is subject to tax. Thus, Tenn. Code Ann. § 67-5-802(a)(1) instructs how to determine the taxable value of a mobile home.

Other statutes reference § 67-5-802 and provide insights into its Intent. Section 67-5-501(9)(A) refers to § 67-5-802 as follows: "For purposes of classification and assessment of property . . . 'Real Property' includes lands, tenements, hereditaments, structures, improvements, **movable property assessable under § 67-5-802**, or machinery and equipment affixed to realty . . . ." Tenn. Code Ann. § 67-5-501(9)(A). Section 67-5-502 refers to § 67-5-802 as well, "The function of assessment shall be to assess . . . [a]ll property . . . to the person or persons owning . . . the same . . . provided that any temporary improvement, or **movable structures that are assessable under § 67-5-802**, regardless of ownership, shall be assessed as real property as an improvement to the land where located . . . ." Tenn. Code Ann. § 67-5-502. (Emphasis supplied). The foregoing sections refer to movable property or movable structures as being "assessable under § 67-5-802." The Supreme Court has interpreted the term "assessable" to mean "taxable." *Johnson v. Clinchfield R.R.*, 43 S.W.2d 386, 386 (Tenn. 1931). Thus, § 67-5-802(a)(1) expresses the intent that mobile homes are to be taxed and the taxable value of mobile homes is to be determined by treating them as if they are real estate and improvements to the underlying land.

Although mobile homes are to be taxed and valued for purposes of taxation, this does not necessarily mean that the ultimate liability for the resulting tax will fall on the mobile home or its owner. According to the Tennessee Supreme Court, the purpose of § 67-5-802(a)(1) was "to implement Article II, Section 28, of the Constitution of Tennessee . . . ." *Belle-Aire Village, Inc. v. Ghorley*, 574 S.W.2d 723, 724 (Tenn. 1978). The relevant portion of Article II, Section 28 provides that "House trailers, mobile homes, and all other similar movable structures used for commercial, industrial, or residential purposes shall be assessed as Real Property as an improvement to the land where located." The Court described the purpose of this constitutional provision as follows:

> The obvious purpose of this provision was to provide an effective manner for taxing mobile homes which had proliferated in the years immediately prior to the convention. The method chosen was to treat them as real property by taxing them as improvements to the land where located, thereby making such land liable for the

taxes on the mobile homes.

*Belle-Aire Village, Inc*., 574 S.W.2d at 725 (citing *New York Mobile Homes Assoc. v. Steckel*, 9 N.Y.2d 533 (1963)).  The Court interpreted § 67-5-802(a)(1) as imposing tax liability on the land where a mobile home is located rather than on the mobile home itself.  *Also see,* Tenn. Op. Atty. Gen. No. 94-048 at 1 (1994).  Thus, the value of the mobile home is attributed to the underlying land as an improvement to that land, and the owner of that land, not the mobile home owner, is obligated to pay the tax.  This is true in the mobile home park context, where the owner of the park has the ultimate responsibility for paying the entire amount of property taxes imposed upon the land even though a portion of that tax is attributable to the value of mobile homes which are not owned by the land owner.  *See*, Tenn. Code Ann. § 67-5-802(a)(1).  The statute makes the mobile home owner responsible to pay his or her share of the property tax to the mobile home park owner and gives the park owner a lien against the mobile homes on his land.  "[T]he mobile home park owner is not the tax collector but is the taxpayer for the taxes due on the real property which includes taxes allocable to the mobile homes situated thereon." *Belle-Aire Village, Inc*., 725.

That § 67-5-802(a)(1) imposes ultimate liability for a mobile home's taxable value on the land rather than on the mobile home, is supported by other statutes.  *See, e.g.,* § 67-5-603(a)(1) which provides that if the value assessed to a tract of land includes the value of an improvement that is subsequently "moved, demolished, destroyed, or substantially damaged," then the assessment of the land is to be corrected to reflect the diminution of the land's value.  This section, however, "shall not apply to the movement of a mobile home or other 'moveable structure' as defined in § 67-5-501." *Id.*  Thus, when the taxable value of a mobile home is assessed against the mobile home's underlying land, the land remains liable for the tax on that value even if the mobile home is moved off the land after the assessment.  This section demonstrates that the General Assembly was not concerned about the movement of mobile homes off of the land to which their values had been assessed, so long as the underlying land was liable for the mobile home's share of the property tax.  Another statute reinforces this statutory intent, i.e., § 67-5-502 which states,

> The function of assessment shall be to assess . . . [a]ll property . . . to the person or persons owning . . . the same . . . provided that any . . . movable structures that are assessable under § 67-5-802, **regardless of ownership**, shall be assessed as real property as an improvement to the land where located . . . .

Tenn. Code Ann. § 67-5-502. (Emphasis supplied).  Accordingly, the foregoing supports the view that § 67-5-802(a)(1) sets forth a method for determining the value of mobile homes for the purpose of imposing tax liability on any land where a mobile home is located.

The section which creates a tax lien assessed by the state, a county, or a municipality, is Tenn. Code Ann. § 67-5-2101, which states:

The taxes assessed by the state of Tennessee, a county, or municipality, taxing district, or other local governmental entity, upon any property of whatever kind, and all penalties, interest, and costs accruing thereon, shall become and remain a first lien upon such property from January 1 of the year for which such taxes are assessed.

Thus, "The taxes assessed . . .upon any property . . .shall become . . . a first lien upon such property . . . ." As previously stated, the term "assess" has dual meanings: i.e., to value for taxation, and to determine and impose a tax. *Texas Co. v. Ford*. Section 67-5-2101 uses "assess" in its second meaning such that the central language of the statute is stated: "The taxes [imposed] . . . upon any property . . . shall become . . . a first lien upon such property . . . ." Accordingly, the tax lien attaches only to the property upon which the tax has been imposed.

The tax lien in this case could only attach to the mobile home at issue if the mobile home where considered property upon which the tax was imposed. The foregoing authorities compel the conclusion that the land underlying the mobile home has the ultimate liability for the taxation of the mobile home's assessed value. We conclude that the purpose of Section 67-5-802(a)(1) was not to impose a tax on mobile homes. Instead its purpose was to describe a method for determining the value of mobile homes for the purpose of imposing tax liability on any land where a mobile home is located. The tax lien created by § 67-5-2101 does not attach to the mobile home because the mobile home is not the property upon which the tax has been assessed (i.e. imposed). In this regard, *See,* Tenn. Op. Atty. Gen. No. 95-071 at 1 (1995).

However, plaintiff strenuously argues that if the taxes on the underlying land are not paid the mobile home will be sold with the land, regardless of who owns the mobile home. The issue in this case has been considered on several occasions by the New York State courts, and the New York statutory scheme which the Tennessee Supreme Court has described as a similar procedure to that used in Tennessee. *See Belle-Aire Village, Inc.* Our analysis is in accord with *Casaburi v. Dow*, 100 A.D.2d 693 (N.Y. App. Div. 1984); *Reddick v. County of Chemung*, 114 A.D.2d 559 (N.Y. App. Div. 1985), and *JKSP Restaurant, Inc. v. County of Nassau*, 127 A.D.2d 121 (N.Y. App. Div. 1987).

Because the property taxes were assessed against Ferguson, the tax sale could only convey property owned by Ferguson. Thus, the title to the mobile home could not be conveyed through the tax sale. Therefore, we reverse the Judgment of the Trial Court, grant summary judgment to defendant and tax the cost of the cause to Darrell McEachron.

_____

_____

HERSCHEL PICKENS FRANKS, P.J.

-6-