**RICHARDSON v. N.C. DEP'T OF PUB. INSTRUCTION LICENSURE SECTION**

[199 N.C. App. 219 (2009)]

CHARLIE L. RICHARDSON, Petitioner v. N.C. DEPT OF PUBLIC INSTRUCTION
LICENSURE SECTION, Respondent

No. COA09-83

(Filed.18 August 2009)

**1. Administrative Law; Schools and Education— judicial
review of final agency decision—unethical conduct—loss
of teacher's license**

A whole record review revealed the trial court did not err by
affirming the final agency decision of the State Board of
Education denying petitioner teacher's request for reinstate-
ment of his teaching license because a reasonable public school
teacher of ordinary intelligence, utilizing common understand-
ing, would know that sending threatening and obscene letters
to his supervisor would place the teacher's professional position
in jeopardy.

**2. Administrative Law; Schools and Education— judicial
review of final agency decision—dismissal of career
employee—teacher**

The superior court did not err by failing to make findings of
fact addressing petitioner teacher's argument that there was an
error of law based on a failure to follow the administrative statu-
tory procedures for dismissal of a career employee under
N.C.G.S. § 115C-325(h)(2).

**3. Administrative Law— judicial review of final agency deci-
sion—whole record test—abuse of discretion standard—
arbitrary and capricious standard**

The trial court did not err by applying the whole record
test and finding that defendant's adoption of the decision of the
ALJ was not arbitrary, capricious, or an abuse of discretion
because: (1) there was no evidence in the record that anything
presented to or considered by the Ethics Committee panel or the
superintendent was improper, irrelevant, or tainted by the deci-
sion-making process; and (2) petitioner did not carry his burden
to show that the trial court erred in finding that the denial of the
request for reinstatement was not arbitrary, capricious, or an
abuse of discretion.

**4. Administrative Law— judicial review of final agency decision—burden of proof**

The trial court did not err by finding that the adoption of the ALJ's decision was not error based on petitioner teacher's failure to show that the conduct underlying revocation did not involve moral turpitude or immorality.

Appeal by petitioner from order entered 1 August 2008 by Judge Beverly T. Beal in Mecklenburg County Superior Court. Heard in the Court of Appeals 11 June 2009.

*Attorney General Roy Cooper, by Assistant Attorney General Laura E. Crumpler, for the State.*

*Gray, Johnson & Lawson, LLP, by Sharon M. Lawson-Davis, for plaintiff-appellant.*

BRYANT, Judge.

Petitioner Charlie L. Richardson appeals from an order entered in Mecklenburg County Superior Court affirming the decision of the State Board of Education[1] to deny reinstatement of his teaching license. We affirm the order of the Superior Court.

*Facts*

Richardson was a teacher for twenty-two years and held a teaching license (license) issued by the North Carolina State Board of Education (SBOE). In 1994, Richardson brought suit in the United States District Court for the Western District of North Carolina against his employer, the Cabarrus County Board of Education (the Board), alleging that the Board had unlawfully denied him promotion because of his race and had given him low evaluations and not promoted him because he had filed discrimination charges with the Equal Employment Opportunity Commission (EEOC).

A federal magistrate dismissed all of the claims except that which alleged discrimination by the Board in failing to promote Richardson to Assistant Principal. At trial, a jury was unable to render a verdict, and the federal magistrate declared a mistrial. A retrial was scheduled, but before it was held, the parties reached a settlement.

---

1. The North Carolina Department of Public Instruction, the named respondent, is comprised of such divisions and departments as the State Board of Education considers necessary for supervision and administration of the public school system. N.C. Gen. Stat. § 115C-21(a) (2007).

A few weeks after the mistrial, Jessie Blackwelder, Assistant Superintendent for the Cabarrus County Schools and a designated witness for respondent, received an anonymous letter. The letter referred to Blackwelder's "lies," noted that it was time "to get [her] back," and referred to "incriminating evidences" which would be revealed "to Mr. Richardson's attorney . . . [and] to Judge Horn, too" unless Richardson received an administrative position "immediately." The letter also "promise[d]" Blackwelder jail, fines, and "sudden retirement" if she did not cooperate with the demands made by the anonymous author.

Four months later, on 8 April 1997, Blackwelder received a second anonymous letter referring to the settlement agreement as a "cheap ass deal" that Richardson was too smart to sign. The tone and content of the letter was angrier and more threatening than the first and referred to Blackwelder by derogatory names. Blackwelder intercepted a third anonymous letter addressed to her husband that said among other things that she would learn not to mess with the writer.

The Federal District Court granted the Board a hearing on its motion to dismiss and Richardson's motion to enforce the settlement agreement. An evidentiary hearing was held on 12 April 1997 to determine if Richardson was engaged in witness tampering or intimidation. Two additional hearings were conducted on 12 May 1997 and 2 July 1997. Richardson denied typing or sending any of the anonymous letters. However, there was evidence presented that the first letter was typed on the same typewriter used to type employment inquiries submitted and signed by Richardson. A federal magistrate concluded that Richardson typed and mailed the three anonymous letters or caused them to be typed and mailed. The magistrate further concluded that Richardson's conduct was intentional, egregious, and in bad faith and that the letters threatened Blackwelder; Richardson attempted to intimidate Blackwelder; and Richardson's actions "likely" violated federal laws dealing with perjury and intimidating witnesses.

On 29 August 1997, having concluded that Richardson was the author of the anonymous letters, the magistrate granted the Board's motion to dismiss and released the Board from the settlement agreement. Richardson was also barred from filing any claim based on the pending EEOC "right to sue" notice which had been incorporated in the aborted settlement agreement. The magistrate's decision was affirmed by the Fourth Circuit Court of Appeals. *See Richardson v.*

*Cabarrus County Bd. of Educ.*, 151 F.3d 1030 (table), 1998 U.S. App. LEXIS 24380 (4th Cir. 1998).

Richardson filed a Petition for Contested Case Hearing in the North Carolina Office of Administrative Hearings (OAH), and a hearing was held on 5 November 1999 before Administrative Law Judge (ALJ) Robert C. Reilly. ALJ Reilly, in an order dated 11 April 2000, concluded that Richardson had engaged in conduct that was unethical. ALJ Reilly also found that Richardson's conduct in sending the threatening and obscene letters had a "reasonable and adverse" relationship to his continuing ability to perform any of his professional functions in an effective manner and recommended to the SBOE that Richardson's license be revoked. On 3 August 2000, the SBOE revoked Richardson's license. Thereafter, Richardson pursued appeals of the final agency decision by the SBOE to the North Carolina Superior Court, the North Carolina Court of Appeals, and the North Carolina Supreme Court; all courts upheld the license revocation.

On 17 February 2006, a panel of the Superintendent's Ethics Advisory Committee—an informal committee appointed by the Superintendent to review various matters related to the licensing of teachers—considered an application by Richardson for reinstatement of his license.[2] On 12 June 2006, the Office of the State Superintendent issued a letter notifying Richardson that the panel concluded that his license had been revoked due to moral turpitude and grounds listed in G.S. 115C-325(e)(1)b (immorality) and that the panel's recommendation was that his license not be reinstated. State Superintendent, June Atkinson, concurred with the panel's recommendation, and Richardson's request for reinstatement was denied. Richardson petitioned the OAH to compel the Department of Public Instruction to act in his favor.

After a hearing on 6 October 2006, Administrative Law Judge (ALJ) Beecher R. Gray on 3 November 2006 entered a decision holding that the denial of Richardson's request for reinstatement by the Department of Public Instruction Licensure Section was supported by the evidence. ALJ Gray recommended that the SBOE issue a final agency decision upholding the decision to deny reinstatement of Richardson's license. On 5 April 2007, the SBOE adopted ALJ Gray's decision, without modification, as its final agency decision and denied Richardson's request for reinstatement of his license.

---

2. Richardson sought reinstatement of his license on at least three prior occasions.

Richardson filed a Complaint for Judicial Review of the final agency decision in Mecklenburg County Superior Court. Superior Court Judge Beverly T. Beal held a hearing on 20 March 2008 and entered an order on 1 August 2008 affirming the final agency decision of the SBOE denying reinstatement of Richardson's license. Richardson appeals.

---

On appeal, Richardson presents the following questions: whether the trial court erred in (I) concluding that Richardson's original revocation based on "unethical" conduct does not preclude a subsequent finding of "immoral" conduct for purposes of reinstatement; (II) failing to make findings of fact as to whether defendant failed to follow the administrative statutory procedures for dismissal of a career employee; (III) finding that defendant's adoption of the decision of the ALJ was not arbitrary, capricious, or an abuse of discretion; and (IV) finding that defendant's adoption of ALJ Gray's decision was not error.

*Standard of Review*

Under North Carolina General Statutes section 150B-51, a court may reverse or modify an agency's decision if the substantial rights of the petitioner have been prejudiced because the agency's findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;

(2) In excess of the statutory authority or jurisdiction of the agency;

(3) Made upon unlawful procedure;

(4) Affected by other error of law;

(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or

(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. 150B-51(b) (2007).

Judicial review of whether an agency decision was based upon an unlawful procedure or an error of law requires *de novo* review. *Walker v. North Carolina Dep't of Human Resources*, 100 N.C. App. 498, 502, 397 S.E.2d 350, 354 (1990). The agency's decision is presumed to be made in good faith and in accordance with governing

law. Therefore, the burden is on the party asserting otherwise to overcome such presumptions by competent evidence to the contrary when making a claim that the decision was affected by error of law or procedure. *Albemarle Electric Membership Corp. v. Alexander*, 282 N.C. 402, 192 S.E.2d 811 (1972).

When a petitioner claims that an agency action is unsupported by substantial evidence in view of the entire record or that the decision is arbitrary, capricious, or an abuse of discretion, the standard of review for the reviewing court is the "whole record" test. *Rector v. North Carolina Sheriffs' Educ. & Training Standards Comm'n*, 103 N.C. App. 527, 532, 406 S.E.2d 613, 616 (1991). The North Carolina. Supreme Court has described the "whole record" test as follows:

> The whole record test requires the reviewing court to examine all competent evidence (the whole record) in order to determine whether the agency decision is supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Therefore, if we conclude there is substantial evidence in the record to support the Board's decision, we must uphold it. We note that while the whole-record test does require the court to take into account both the evidence justifying the agency's decision and the contradictory evidence from which a different result could be reached, the test does not allow the reviewing court to replace the [] Board's judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*.

*Meads v. North Carolina Dep't of Agric., Food & Drug Protection Div., Pesticide Sec.*, 349 N.C. 656, 663, 509 S.E.2d 165, 170 (1998) (internal citations and quotations omitted).

This Court has held that under the whole record test, "[a]dministrative agency decisions may be reversed as arbitrary or capricious if they are 'patently in bad faith,' or 'whimsical' in the sense that 'they indicate a lack of fair and careful consideration' or 'fail to indicate "any course of reasoning and the exercise of judgment." ' " *Rector*, 103 N.C. App. at 532, 406 S.E.2d at 617 (quoting *Lewis v. North Carolina Dep't of Human Resources*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989)). However, "[t]here is a rebuttable presumption that an administrative agency has properly performed its official duties[,]" *In re Appeal from Civil Penalty Assessed for Violations of Sedimentation Pollution*, 92 N.C. App. 1, 6, 373 S.E.2d 572, 575

(1988), *rev'd on other grounds*, 324 N.C. 373, 379 S.E.2d 30 (1989), and a petitioner has the burden to prove that the agency acted erroneously. *Id.*

*I*

**[1]** Richardson argues that the trial court erred when it affirmed the final agency decision of the SBOE denying his request for reinstatement of his license. Richardson contends that because the revocation of his license was based on "unethical" conduct and the denial of his request for reinstatement of his license was based on "immoral" conduct, that such inconsistent bases constituted error. We disagree.

Under North Carolina Administrative Code, Title 16, Chapter 6, Subchapter 6C, Section 0312(a), the SBOE may revoke a teaching license based upon several grounds, including "any . . . unethical . . . conduct by a person, if there is a reasonable and adverse relationship between the underlying conduct and the continuing ability of the person to perform any of his/her professional functions in an effective manner[.]" 16 N.C.A.C. 6C.0312(a) (2007). Under 16 N.C.A.C. 6C.0312(f)(1), the SBOE may not reinstate the license if the action that resulted in revocation involved abuse of minors, moral turpitude, or grounds listed in N.C. Gen. Stat. 115C-325(e)(1)(b). 16 N.C.A.C. 6C.0312(f)(1) (2007). Under N.C.G.S. § 115C-325(e)(1)(b), "immorality" is listed as a ground for dismissal.

Richardson's license was initially revoked because he had engaged in unethical conduct by sending threatening and obscene letters to his supervisor which had a "reasonable and adverse" relationship to his continuing ability to perform any of his professional functions in an effective manner. Richardson then applied for reinstatement of his license and such application was rejected. Richardson now argues that there is a difference between immoral and unethical conduct. We disagree.

We do however agree with the reasoning of ALJ Gray that the original revocation based on "unethical" conduct can be fairly characterized as constituting "immorality," which has been defined as "such conduct that by common judgment reflects upon a teacher's fitness to teach[.]" *Barringer v. Caldwell County Bd. of Educ.*, 123 N.C. App. 373, 381, 473 S.E.2d 435, 440 (1996). ALJ Gray also found that the conduct underlying Richardson's license revocation was "immoral" under the definition enumerated by the court in *Barringer*. Richardson's original revocation was based upon unethical behavior

that negatively impacted his fitness to teach. As the State Superintendent stated in her 12 June 2006 letter to Richardson:

> The panel concluded that your license . . . was revoked due to moral turpitude and grounds listed in G.S. 115C-325(e)(1)b. (immorality). . . . As a result, the panel concluded that it could not recommend that your license be reinstated on the grounds that the action that resulted in revocation was based on moral turpitude and grounds listed in G.S. 115C-325(e)(1)b (immorality).

The conduct giving rise to the revocation of Richardson's license is the same conduct upon which the agency based its refusal to reinstate his license, which conduct can be classified as both unethical and immoral. "Accordingly, a reasonable public school teacher of 'ordinary intelligence,' and utilizing 'common understanding,' would know that [sending threatening and obscene letters to his supervisor would] . . . consequently plac[e] the teacher's professional position in jeopardy." *Id.* at 382, 473 S.E.2d at 441.

Upon review of the whole record, there is substantial evidence to support the superior court's decision to uphold the SBOE's final agency decision adopting ALJ Gray's ruling that Richardson's conduct constituted "immorality." Therefore, this assignment of error is overruled.

## II

[2] Richardson argues that the superior court erred by failing to make findings of fact addressing his argument that there was an error of law because defendant failed to follow the administrative statutory procedures for dismissal of a career employee under N.C. Gen. Stat. § 115C-325(h)(2). We disagree.

Richardson contends that the ALJ and superior court could not use N.C. Gen. Stat. 115C-325(e)(1)(b) to uphold the denial of his reinstatement because this statute only applies when a career employee is dismissed or demoted, and therefore because he resigned, the statute is inapplicable to him. Richardson argues that 16 N.C.A.C. 6C.0312(a)(8) should be used instead. However, Richardson fails to refer this Court to any assignments of error and fails to cite to any authority for these arguments. Therefore, pursuant to N.C. R. App. P. 28(b)(6), these arguments are deemed abandoned.

We do note that the procedures for reinstatement of teaching licenses after revocation as set forth in the SBOE Rules at 16 N.C.A.C.

6C.0312(f) and in Chapter 150B of the North Carolina General Statutes, were properly followed. Richardson also argues that the decision to deny the license reinstatement was made upon unlawful procedure because the grounds justifying license revocation, 16 N.C.A.C. 6C.0312(a)(8), were not the same grounds used to deny his reinstatement, N.C. Gen. Stat. 115C-325(e)(1). Much of Richardson's argument is based on his requests for and denial of reinstatement in May, November, and December 2003. These actions are not a part of this appeal and will not be addressed. Richardson's other contention regarding use of the same conduct to uphold his 2006 denial of reinstatement has been addressed in Issue *I*, *supra*. This assignment of error is overruled.

## III

[3] Richardson argues that the trial court committed error by applying the "whole record" test and finding that defendant's adoption of the decision of ALJ Gray was not arbitrary, capricious, or an abuse of discretion. We disagree.

Richardson points to the minutes of the Ethics Advisory Committee panel to support his argument that the adoption of the ALJ's decision was arbitrary, capricious, or an abuse of discretion. According to Richardson, there was nothing in the minutes that reflected any discussion about the statutory requirements for reinstating his license and whether he met those requirements. He also alleges that some of the information discussed by the Ethics Committee panel was not relevant to the determination of whether he met statutory grounds for reinstatement.

The minutes reveal that Richardson's request was presented to the Ethics Committee panel and that Counsel for the Ethics Committee panel explained the background of his case, including the conduct that gave rise to the revocation of his license Additionally, as ALJ Gray found, the Ethics Committee is advisory only. "The Superintendent is not bound by any recommendation and is free to base her licensure decisions on information presented to her different from or in addition to that which came before the committee."

There is no evidence in the record that anything presented to or considered by the Ethics Committee panel or the Superintendent was improper, irrelevant, or tainted by the decision-making process. We hold that Richardson did not carry his burden to show that the trial

court erred in finding that the denial of the request for reinstatement was not arbitrary, capricious, or an abuse of discretion. Accordingly, this assignment of error is overruled.

## IV

[4] Richardson argues that the trial court committed error by finding that defendant's adoption of ALJ Gray's decision was not error because Richardson failed to show that the conduct underlying revocation did not involve moral turpitude or immorality. We disagree.

It is well-settled that a petitioner has the burden of proof at an administrative hearing to prove that he is entitled to relief from the action of the administrative agency. *Overcash v. N.C. Dep't of Env't & Natural Res.*, 179 N.C. App. 697, 635 S.E.2d 442 (2006). This burden is on the petitioner even if he must prove a negative. *Id.*

Because Richardson has failed to show any error in the trial court's decision, this assignment of error is overruled.

AFFIRMED.

Judges CALABRIA and ELMORE concur.