An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1014

Filed: 5 May 2015

Union County, No. 13-CVS-00273

JERINDA D. STATON, Petitioner,

v.

UNION COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent.

Appeal by Petitioner from order entered 9 July 2014 by Judge Tonya M. Wallace in Union County Superior Court and order entered 22 May 2014 by Judge W. David Lee in Union County Superior Court. Heard in the Court of Appeals 18 February 2015.

> *Meagan I. Kiser, Cranfill Sumner & Hartzog LLP, for the respondent-appellee.*
>
> *John S. Arrowood, James McElroy & Diehl, P.A., for the petitioner-appellant.*

HUNTER, JR., Robert N., Judge.

Jerinda D. Staton ("Petitioner") appeals from the order denying her Motion to Present Additional Evidence entered on 9 July 2014 and the order affirming her termination from Union County Department of Social Services ("DSS") entered on 22 May 2014.

## I. Factual and Procedural History

In April 2011, Petitioner was terminated from her position as an income maintenance worker within the Children and Family Medicaid section of DSS. Prior to her termination, Petitioner had been employed by DSS for over seventeen years in various positions. As an income maintenance worker, her job responsibilities included "processing, determining and/or re-determining applicant/client eligibility for Medicaid, including interviewing clients, completing initial applications, [and] verifying the information obtained."

For the majority of her time as a DSS employee, Petitioner received positive reviews and even won an "Outstanding Caseworker Award" from the North Carolina Chapter of National Eligibility Workers Association. In 2007, however, Petitioner began receiving negative reviews from her new supervisor, Mary Beth Gaddy ("Gaddy"). As a result, Petitioner was placed on a "Performance Improvement Plan." Petitioner believed Gaddy was targeting her, and she both verbally complained and filed official complaints to this effect.

Petitioner's work performance continued to decline, and in June 2010, she received a five-day suspension for "unacceptable personal conduct" when she signed on to another employee's computer to reopen a client's benefits for food and nutrition. Petitioner's unacceptable conduct constituted both unauthorized access and a breach

of client confidentiality. Petitioner was warned that this violation in itself could be grounds for dismissal, and that further disciplinary actions could result in dismissal.

On 11 August 2010, Chris Bisbee, a caseworker for DSS, received a Medicaid benefits application from C.B.[1] Bisbee questioned C.B.'s eligibility for Medicaid benefits based on C.B.'s private insurance plan and his suspicion that C.B. was married. On 10 September 2010, Bisbee referred C.B.'s application for benefits to Iola Crook ("Crook"), a program integrity investigator, who initiated an investigation. On 30 September 2010, Crook made a notation to the statewide online verification system ("OLV") under the Enterprise Program Integrity Control System ("EPICS") tab indicating an investigation of C.B.'s file was ongoing. The OLV system alerts any caseworks who check it of alerts or issues in place for a particular client. After conducting an investigation, Crook found C.B. was ineligible for Medicaid benefits, and relayed this information to Bisbee on 30 September 2010. C.B. received notice that she was denied Medicaid benefits "because [she] ha[d] not provided the information needed to establish eligibility." On 1 October 2010, Crook opened an integrity claim against C.B. and updated C.B.'s OLV file to reflect that there was an investigation referral in place.

DSS has several policies in place to prevent improper approval. As dictated in the employee manual, all caseworkers are expected to view the files of each applicant.

---

[1] We use the pseudonym "C.B." to protect the applicant's identity.

If the physical file cannot be located, intra-agency communication and prevention mandates of the Medicaid Manual require caseworkers to send out an agency e-mail or contact a supervisor. DSS reiterates these policies to its workers in unit meetings and by email; it also recommends that caseworkers ask processing assistants for aid in finding missing files. Further, all employees are required to complete a full OLV inquiry, which includes examining the EPICS tab. The EPICS tab lights up to indicate if there are any red flags for the applicant or client.

On 28 December 2010, C.B. filed an application for Medicaid with Petitioner. DSS policy dictated that Petitioner process this claim within forty-five calendar days. Because of the prior investigation, Crook had possession of C.B.'s file during the entire duration of the approval process. On 11 February 2011, Petitioner approved C.B. for Medicaid benefits without ever viewing her physical file or requesting it. Although Petitioner contends she did check the EPICS tab in OLV and saw no indication her case was undergoing an integrity investigation, the integrity referral had been in place since September 2010. Therefore, if Petitioner had checked the EPICS tab, she would have been aware of the ongoing investigation.

On 10 March 2011, a caseworker brought Crook paperwork which indicated Petitioner had approved C.B.'s application for Medicaid. Crook wrote a memorandum explaining the incident and sent it to Petitioner and the caseworker who brought the file to her. On 11 March 2011, Crook determined C.B. was not eligible for benefits

and instructed a caseworker to terminate any further Medicaid benefits to C.B. Subsequently, both Stephanie Leach, Crook's supervisor, and Gaddy, Petitioner's supervisor, were notified of the improper approval, but not told at the time of Petitioner's involvement. Rae Alepa ("Alepa"), Gaddy's supervisor, was also notified. On 11 March 2011, Alepa and Crook filed a memorandum detailing ten violations Petitioner made during the approval process of C.B.'s application. Alepa notified Director Dontae Latson ("Latson") and HR Manager Suzanne Moose ("Moose) of the information contained in the memorandum. The 11 March 2011 memorandum was also provided to Gaddy.

After receiving the aforementioned information, Latson scheduled Petitioner to appear at a pre-disciplinary conference. On 15 March 2011, Petitioner received a letter notifying her of the pre-disciplinary conference and the allegations against her. During the pre-disciplinary conference, which took place later that day, Petitioner claimed she believed the manual gave her authority to approve C.B.'s application. On 16 March 2011, in a letter to Latson, Petitioner explained she believed she was in possession of C.B.'s file, but at some point without her knowledge, the file had disappeared from her office. She claimed not to be aware of the procedures in place that required employees to send out an intra-agency email or consult with a supervisor in the case of a missing file.

After consulting, through Moose, with the Office of State Personnel over what disciplinary action he should take on Petitioner's matter, Latson met with Petitioner, Alepa, and Moose and announced he was terminating Petitioner from employment due to her unacceptable personal conduct. He reiterated this in a letter given to Petitioner at the time of the meeting, which detailed that Petitioner was being terminated for "authorizing benefits without following the correct protocol," which was considered agency error. The letter also explained that Petitioner "failed two prior disciplinary actions in June 2010[,]" demonstrating "a pattern of unacceptable personal conduct."

On 31 March 2011, Petitioner appealed to the Director of the Union County Health Department, where the recommendation for her dismissal was upheld. Following this decision, Latson issued a final determination dismissing Petitioner. On 18 May 2011, Petitioner appealed to the Office of Administrative Hearings. After hearing the evidence, Administrative Law Judge ("ALJ") Melissa Owens Lassiter made numerous findings of fact, including the following:

> 62. A preponderance of the evidence established that Respondent had instructed its workers, in unit meetings and by emails, to send out an agency wide email to other workers when a caseworker could not locate a file, and ask if anyone has that client's file. . . . As a backup, caseworkers should also ask their processing assistants to assist them with locating the client's file. . . . Respondent's witnesses acknowledged that this policy is a unit policy, but is not written . . . . Ms. Crook, Ms. Gaddy, and Director Latson all gave consistent explanations supporting the

existence of the proper protocol to follow when staff cannot locate a case file[.]

. . . .

65. Petitioner claimed that when she looked at C.B[.]'s case file in the OLV on December 28, 2010, the OLV summary indicated, "No program integrity claims with balance." When she opened the EPICS tab, "nothing came back." . . . She also contended that before she approved C.B. for benefits on February 11, 2011, she looked at the EPICS tab in the OLV on February 11, 2011. The system again read, "no program integrity claim were balanced," meaning there was no information in the system. []

66. Petitioner's contention [Finding of Fact 65] is inconsistent with the preponderance of the evidence in this case. First, Ms. Crook explained, using Respondent's Exhibit 18, how Petitioner would and should have seen Crook's notation regarding an open fraud investigation of C.B. when Petitioner opened the EPICS tab of the OLV on December 28, 2010. Respondent is [sic] Exhibit 18 was printed from the OLV on October 18, 2011, and supported Crook's explanation. That document showed Crook's notation that she discovered the program integrity claim . . . on October 1, 2011, and opened a fraud investigation into that claim on October 6, 2010 [sic]. Second, on March 16, 2011, Ms. Gaddy opened the EPICS tab in the OLV for C.B. The system showed there had been a program integrity referral made in early September of 2010, and that program integrity had found that she had committed fraud[.]

67. . . . Petitioner failed to produce any documentary evidence supporting her claim that there was no information or notation regarding the open fraud investigation into C.B's application for benefits, when Petitioner looked in C.B.'s case file on either December 28, 2010, or on February 11, 2011 when Petitioner approved C.B.'s benefits application.

. . . .

70. . . . Section C of the Family and Children's Medicaid MA 3210 policy . . . requires the caseworker "verify each element necessary to determine eligibility in the aid/program category." . . . Section D of MA 3210 also requires third party verification of a client's information to determine eligibility on certain factors, including factors such as whether a Medicaid deductible has been met, and proof of earned and unearned income. In this case, C.B.'s household composition, marital status, and current health insurance provider were items that needed verifying to conduct a proper determination of C.B.'s eligibility for benefits. Since Petitioner did [sic][2] locate and review C.B.'s case file before she approved C.B. for Medicaid benefits, she failed to follow the requirements of this policy.

71. Reviewing C.B.'s case file would have alerted Petitioner that Respondent had previously denied benefits to C.B. for failing to provide verification of the same items in C.B.'s December 28, 2010 application . . . that justified denial of C.B.'s December 28, 2010 benefits application.

The ALJ made the following conclusions of law:

8. Respondent met its burden of proof by establishing by a preponderance of the evidence that it had just cause to terminate Petitioner's employment. A preponderance of the evidence showed that Petitioner engaged in a willful pattern of failing to follow agency rules, and that such actions constituted unacceptable personal conduct. . . . Petitioner engaged in intentional violation of known work

---

[2] The finding that Petitioner "*did* locate and review C.B.'s case file before she approved C.B. for Medicaid benefits" appears to be an drafting error. The ALJ findings of fact nos. 34-38 establish that from 28 December 2010, when C.B. first met with Petitioner to file an application for benefits, until 11 February 2011, when Petitioner approved C.B.'s benefits, Crook maintained possession of C.B.'s case file. During that time, Petitioner never asked Crook for C.B.'s case file, nor did she take possession of it.

rules and protocol for Medicaid case, which actions constituted unacceptable personal conduct for which no prior warning is required. Petitioner's conduct constituted a violation of DSS' known work rules and policies[.]

9. Respondent proved by a preponderance of the evidence that Petitioner approved an unqualified Medicaid applicant for benefits, and Respondent suffered an "agency error" due to Petitioner's approval of such benefits; thus, becoming unable to recoup losses from the erroneous benefits paid. Petitioner's actions constituted conduct unbecoming a state employee that is detrimental to state service.

. . . .

11. Based on the foregoing, Respondent satisfied its burden of proof and established just cause for dismissing Petitioner from employment.

Accordingly, based on its findings of fact and conclusions of law, the ALJ determined that "Respondent's decision to determinate Petitioner's employment should be AFFIRMED." On 19 December 2012, DSS adopted the ALJ's order as its own final decision ("Decision") and affirmed Petitioner's termination for unacceptable conduct.

On 30 January 2013, Petitioner filed a petition in superior court requesting judicial review of DSS's final agency decision, pursuant to N.C. Gen. Stat. § 150B-43. Petitioner also filed, pursuant to N.C. Gen. Stat. § 150B-43, a Motion to Submit Additional Evidence, seeking to admit affidavits of numerous current and former employees of Respondent. On 9 January 2014, Petitioner's Motion to Submit

Additional Evidence was denied. On 22 May 2014, based on its findings and conclusions, the superior court affirmed the Decision and the termination of Petitioner's employment. Petitioner gave timely notice of appeal from the superior court's orders.

## II.    Jurisdiction

Under N.C. Gen Stat. § 7A-27(b), an appeal of right directly to the Court of Appeals is created "from any final judgment of a superior court . . . including any final judgment entered upon review of a decision of an administrative agency[.]" N.C. Gen. Stat. § 7A-27(b) (2012).

## III.    Standards of Review

"When the trial court exercises judicial review over an agency's final decision, it acts in the capacity of an appellate court." *N.C. Dep't of Env't & Natural Res. v. Carroll*, 358 N.C. 649, 699, 559 S.E.2d 888, 896 (2004) (citations omitted). "[T]he substantive nature of each assignment of error dictates the standard of review." *In re Denial of NC IDEA's Refund of Sales*, 196 N.C. App. 426, 432, 675 S.E.2d 88, 94 (2009) (citation omitted). The superior court's standard of review of an agency decision is governed by N.C. Gen. Stat. § 150B-51(b):

> The court reviewing the final decision may affirm the decision or remand the case for further proceedings. It may also reverse or modify the decision if the substantial rights of the petitioners may have been prejudiced because the findings, inferences, conclusions, or decisions are:

(1) In violation of constitutional provisions;
(2) In excess of the statutory authority or jurisdiction of the agency or administrative law judge;
(3) Made upon unlawful procedure;
(4) Affected by other error of law;
(5) Unsupported by substantial evidence admissible under G.S. 150B-29(a), 150B-30, or 150B-31 in view of the entire record as submitted; or
(6) Arbitrary, capricious, or an abuse of discretion.

N.C. Gen. Stat. § 150B-51(b) (2013).

The trial court reviews matters arising under N.C. Gen. Stat. § 150B-51(b)(1)-(4), *de novo*. *See* N.C. Gen. Stat. § 150B-51(c); *see also Carroll*, 358 N.C. at 659, 559 S.E.2d at 895. When reviewing matters under N.C. Gen. Stat. § 150B-51(b)(5)-(6), the court conducts a fact-based review under the whole record test. *See* N.C. Gen Stat. § 150-51(c); *see also In re Denial of NC IDEA's Refund*, 196 N.C. App. at 433, 675 S.E.2d at 94.

"Under a *de novo* review, the superior court considers the matter anew and freely substitutes its own judgment for the agency's judgment." *Mann Media, Inc. v. Randolph Cty. Planning Bd.*, 356 N.C. 1, 13, 565 S.E.2d 9, 17 (2002) (quotation marks, brackets, and citation omitted). When conducting a review *de novo*, this Court presumes the trial court made its decision in good faith and in accordance with the law. *Richardson v. N.C. Dep't of Pub. Instruction Licensure Section*, 199 N.C. App. 219, 223-24, 681 S.E.2d 479, 483 (2009).

"Under the whole record test, the reviewing court must examine all competent evidence to determine if there is substantial evidence to support the administrative agency's findings and conclusions." *Henderson v. N.C. Dep't of Human Res.*, 91 N.C. App. 527, 530, 372 S.E.2d 887, 889 (1988) (citation omitted). "The reviewing court must not consider only that evidence which supports the agency's result; it must also take into account contradictory evidence or evidence from which conflicting inferences could be drawn. *Id.* at 530-31, 372 S.E.2d 890. The whole record test "does not permit the reviewing court to substitute its judgment for the agency's as between two reasonably conflicting views[.]" *Lackey v. N.C. Dep't of Human Res.*, 306 N.C. 231, 238, 293 S.E.2d 171, 176 (1982). The reviewing court is required to "determine whether the administrative decision had a rational basis in the evidence." *Henderson*, 91 N.C. App. at 531, 372 S.E.2d at 890 (citation omitted). If "substantial competent evidence is found which would support the agency ruling, the ruling must stand." *Little v. N.C. State Bd. of Dental Exam'rs*, 64 N.C. App. 67, 69, 306 S.E.2d 534, 536 (1983) (quotation marks and citation omitted).

This Court reviews a superior court order entered upon a review of an administrative agency for errors of law only. *See Shackleford-Moten v. Lenoir Cnty. Dep't of Soc. Serv.*, 155 N.C. App. 568, 572, 573 S.E.2d 767, 770 (2002). Therefore, this Court's review involves a two-fold task: "(1) determining whether the trial court exercised the appropriate scope of review and, if appropriate, (2) deciding whether

the court did so properly." *Amanini v. N.C. Dep't of Human Res.,* 114 N.C. App. 668, 675, 443 S.E.2d 114, 118-19 (1994) (citations omitted). "This Court's task when reviewing a superior court's order reviewing an administrative decision is simply to 'consider those grounds for reversal or modification raised by the petitioner before the superior court and properly assigned as error and argued on appeal to this Court.'" *Bernold v. Bd. of Governors of Univ. of N. Carolina,* 200 N.C. App. 295, 298, 683 S.E.2d 428, 430 (2009) (quoting *Shackleford-Moten,* 155 N.C. App. at 572, 573 S.E.2d at 770.citations omitted).

## IV.    Analysis

Petitioner contends the trial court committed the following errors: (1) issuing an order affirming Petitioner's just cause termination that failed to provide for meaningful appellate review; (2) affirming Petitioner's termination without conducting a proper just cause analysis; (3) determining that errors of process in Petitioner's pre-disciplinary conference did not prejudice Petitioner's substantial rights; (4) finding sufficient competent and material evidence to support the agency's even though certain facts and conclusions were erroneous; (5) denying Petitioner's motion to submit additional evidence; and (6) determining the agency's decision was not arbitrary or capricious or an abuse of discretion. We disagree.

## A. Trial Court Order

Petitioner contends the trial court committed error by issuing an order affirming Petitioner's just cause termination that failed to provide for meaningful appellate review.

When determining whether a public employer had just cause to discipline its employee, the trial court must engage in two separate inquires: "first, 'whether the employee engaged in the conduct the employer alleges,' and second, 'whether that conduct constitutes just cause for [the disciplinary action taken].'" *Carroll*, 358 N.C. at 665, 599 S.E.2d at 898 (quoting *Sanders v. Parker Drilling Co.*, 911 F.2d 191, 194 (9th Cir. 1990)). The first of these inquires, whether the employee engaged in the alleged conduct, is a fact-based inquiry and must be reviewed under the whole record test. *See Carroll,* 358 N.C. at 665, 599 S.E.2d at 898; *see also Kea v. Dep't of Health and Human Servs.*, 153 N.C. App. 595, 606, 570 S.E.2d 919, 926 (2002); N.C. Gen. Stat. § 150B-51(c). The latter inquiry, whether the employee's conduct constitutes just cause for the disciplinary action taken, is a question of law and must be reviewed *de novo. See Carroll*, 358 N.C. at 666, 599 S.E.2d at 898; *see also* N.C. Gen. Stat. § 150B-51(c).

In its order, the trial court conducted the whole record test for fact-based issues and a *de novo* review for errors of law. The order held:

> The Court, in accordance with N.C.G.S. 150B-51(b)
> has reviewed the Decision, and has considered the whole

record in order to determine whether there is substantial admissible evidence in the record to support the findings of fact set forth in the Decision and whether the conclusions of law are supported by the findings of fact; and further, in order to determine whether the Decision was arbitrary, capricious, or an abuse of discretion.

The Court has also conducted a *de novo* review to determine whether substantial rights of the Petitioner may have been prejudiced because the findings, inferences, conclusions, or decisions were in violation of constitutional provisions, in excess of statutory authority or jurisdiction of the Administrative Law Judge or the Respondent, were made upon unlawful procedure, or affected by other error of law.

The order provided the following additional insights:

The Court has considered the arguments and contentions of counsel and has determined upon review of the entire record that although certain findings of fact and conclusions set forth in the Decision were erroneous, in view of the entire record, there is ample and sufficient competent, material and substantial evidence admissible . . . not in conflict with the erroneous findings of fact, to support the essential findings and essential conclusions of law supporting the determination set forth in the Decision; and further, upon review of the whole record, the Court determines that the Decision was not arbitrary, capricious, or an abuse of discretion.

The Court has determined, upon a *de novo* review to determine whether Petitioner's substantial rights may have been prejudiced because the findings, inferences, conclusions, or decisions . . . were made upon unlawful procedure[] or affected by other error of law that there are errors of law in the record and that there was a departure from lawfully-described procedure by the Respondent with respect to the Petitioner's pre-disciplinary conference. Although this Court in no way condones or approves either these errors or Respondent's deviation from lawful

> procedure, the Court has nonetheless determined that these errors of law and departure from procedure did not prejudice substantial rights of the Petitioner related to her employment termination. . . .

Evidence of a mere recitation of the standards of review used is sufficient to support a finding that the trial court judge applied the proper standard. *See Kea*, 153 N.C. App. at 603, 570 S.E.2d at 924. The trial court judge need only demonstrate a finding of "substantial competent evidence" in the record to support the findings. *See Little*, 64 N.C. App. at 69, 306 S.E.2d at 536. Further, for *de novo* review, this Court presumes the trial court made its decision in good faith and in accordance with the law. *See Richardson*, 199 N.C. App. at 223-24, 681 S.E.2d at 483.

Here, the inclusion of the language about erroneous findings of fact, errors, and deviation from lawful procedure unnecessarily confounds what would otherwise be a clear decision. Although this Court does not condone the use of this language, which serves no purpose other than to cast doubt on the trial judge's ruling, this order, nonetheless, does not prevent meaningful appellate review. As long as this Court can assess "how [the] standard *should have been applied* to the particular facts of [the] case[,]" there is no need for remand. *See Carroll*, 358 N.C. at 666, 599 S.E.2d at 898 (emphasis in original). The language in question does not prevent this Court from determining how the standard should have been applied to the analysis of termination for just cause. The trial judge clearly states he conducted a whole record review, which is appropriate for the first requisite inquiry of the just cause analysis,

and a *de novo* review, which is appropriate for latter inquiry of the just cause analysis. Therefore, the trial court's affirmation of the Decision is based on the record evidence and appropriate application of the law, including the two just cause inquiries. Accordingly, this argument is without merit.

**B.    Proper Just Cause Analysis**

Petitioner contends the trial court erred in affirming Petitioner's termination because it failed to conduct the proper just cause analysis. The basis of Petitioner's contention is that the order is devoid of *any* indication that the trial court conducted the appropriate analysis.

Under the whole record test, the reviewing court must determine whether Petitioner engaged in the conduct alleged by DSS, and whether the conduct is of the type required by statute. By statute, "just cause" for the dismissal of a State Employee, at the time of the alleged incidents may only be established on the basis of "unsatisfactory job performance" or "unacceptable personal conduct." N.C. Gen. Stat. § 126-35(b) (2011 )(repealed 2012). Although not defined by statute, the North Carolina Administrative Code has defined "unacceptable personal conduct" to include, in pertinent part, "the willful violation of known or written work rules" and "conduct unbecoming a state employee that is detrimental to state service." 25 N.C. Admin. Code 1J.0614(i)(8)(d)-(e) (2011).

Here, the ALJ found Petitioner's conduct included the "willful violation of known or written work rules." The ALJ concluded: "Petitioner engaged in intentional violation of known work rules and protocol for Medicaid case, which actions constituted unacceptable personal conduct for which no prior warning is required. Petitioner's conduct constituted a violation of DSS's known work rules and policies[.]" The ALJ found that Petitioner engaged in unacceptable conduct when she authorized C.B.'s benefits without first checking the EPICS tab in OLV or obtaining C.B.'s file. For, on 16 March 2011, when Gaddy checked the EPICS tab in the OLV for applicant C.B., she noted a program integrity referral had been made in early September 2010. Based on her discovery, Gaddy prepared a memorandum for Alepa explaining that Petitioner "did not click on the EPICS screen to open to view comments. If she had, she would have discovered that a fraud referral had been made and investigation was in progress." Furthermore, the ALJ held "Petitioner engaged in a willful pattern of failing to follow agency rules, and that such actions constituted unacceptable personal conduct." Upon Petitioner's termination, Latson provided her with a letter, wherein he stated "[i]t is apparent you have developed a pattern of unacceptable personal conduct."

The ALJ also concluded that "Petitioner's actions constituted conduct unbecoming a state employee that is detrimental to state service." By approving an unqualified Medicaid applicant for benefits, the ALJ found that DSS suffered an

"agency error" and was "unable to recoup losses from the erroneous benefits paid." For the aforementioned reasons, we find the trial court's order affirms the underlying analysis that Petitioner engaged in "unacceptable personal conduct," as required by statute and alleged by DSS.

Next, under a *de novo* review, the reviewing court must determine whether Petitioner's conduct amounted to just cause for termination based "upon an examination of the facts and circumstances" of this case. *See Carroll*, 358 N.C. at 669, 599 S.E.2d at 900 (citation omitted). Here, the ALJ concluded that DSS was unable to recoup losses from the Medicaid benefits that Petitioner erroneously provided to C.B. In his 16 March 2011 letter to Petitioner, Latson stated the following: "I am troubled that I did not hear you take responsibility for your poor judgment of authorizing benefits without following the correct protocol. . . . [Y]our actions are unacceptable and diminish the community's confidence in the services we provide." The ALJ ultimately concluded that Respondent "satisfied its burden of proof and established just cause for dismissing Petitioner from employment." Accordingly, after a *de novo* review of the Decision, which adopted the decision of the ALJ, the trial court judge found no significant errors of law. Therefore, we find the trial court's order affirms the underlying analysis that Petitioner's conduct amounted to just cause for termination.

As the trial court's order affirms the underlying analysis for both just cause inquires, we find this argument is without merit.

## C.    Pre-Disciplinary Conference

Petitioner contends the trial court erred in determining that errors of process in her pre-disciplinary conference did not prejudice Petitioner's substantial rights. In issues concerning unlawful process, the reviewing court must review the case *de novo*. N.C. Gen. Stat. § 150B-51(b)(3).

Pursuant to the North Carolina Administrative Code, an employer need not demonstrate any record of prior disciplinary action for a just cause termination. 25 N.C. Admin. Code 1J.0608(a).  However, once cause for termination is found, the employer must complete two procedural steps before disciplinary action is taken in order to satisfy the employee's due process rights:  (1) there must be a pre-dismissal conference between the employee and the person recommending the dismissal, and (2) there must be written notification provided to the employee stating the reason for dismissal and outlining the employee's right to appeal.  *See* 5 N.C. Admin. Code § 1J.0608(b), (c); *see also* N.C. Gen. Stat. § 126-35(a); *Kea*, 153 N.C. App. at 603-04, 570 S.E.2d at 925.

Petitioner argues her substantial rights were violated as a result of DSS's procedural errors in the pre-disciplinary conference.  Alepa, Gaddy, and Moose were all present at the pre-disciplinary conference on 15 March 2011, in addition to the

person recommending dismissal (Latson), which constitutes a violation of the North Carolina Administrative Code. *See* N.C. Administrative Code 01I.2308(4). Additionally, Alepa, Gaddy, and Moose engaged in questioning Petitioner during the meeting and met with Latson privately after Petitioner was excused. These actions of DSS also constitute violations of the North Carolina Administrative Code.

However, the trial court's order addresses DSS's improper deviation from the Administrative Code. The trial court's order clearly expresses that the court conducted a *de novo* review with respect to the procedure of Petitioner's pre-disciplinary conference. The language of the order explains: "[a]lthough this Court in no way condones or approves either these errors or Respondent's deviation from lawful procedure, the Court has nonetheless determined that these errors of law and departure from procedure did not prejudice substantial rights of the Petitioner related to her employment termination." Here, Petitioner received written notification dated 15 March 2011 of the pre-disciplinary conference, in compliance with the notice and due process procedural requirements contained in the North Carolina General Statutes and the North Carolina Administrative Code. The notification outlined Petitioner's specific conduct necessitating the hearing. Additionally, Petitioner was provided with an opportunity to respond to the proposed disciplinary action, her termination, before it occurred. Following the pre-disciplinary conference, but prior to her dismissal, Petitioner was provided with a

letter detailing the reasons for dismissal as well as her appellate rights. Petitioner also had the opportunity to have her contested case hearing before the ALJ. Therefore, as we agree that DSS's departure from procedure did not prejudice substantial rights of Petitioner related to her employment termination, we affirm the trial court's order as to this issue.

## D.    Sufficient Material Evidence Supporting Agency Determination

Petitioner next contends the trial court erred in finding there was sufficient competent and material evidence to support the agency's determination, despite the presence of "erroneous" facts and conclusions referenced in its order. Petitioner contends the language of the trial court's order that "certain findings of fact and conclusions set forth in the Decision were erroneous" causes uncertainty as to whether the eighteen findings of fact and three conclusions of law that Petitioner excepted to were among the "erroneous facts and conclusions" referenced by the trial court. As this is a fact-based inquiry, the reviewing court conducts a whole record test. *See Carroll*, 358 N.C. at 665, 599 S.E.2d at 898; *see also Kea*, 153 N.C. App. at 606, 570 S.E.2d at 926; N.C. Gen Stat. § 150B-51(c).

In its order, the trial court acknowledges "erroneous" findings of fact and conclusions of law, but concludes "there is ample and sufficient competent, material, and substantial evidence . . . not in conflict with the erroneous findings of fact, to support the essential findings and essential conclusions of law supporting the

determination set forth in the Decision[.]" Here, there is a plethora of sufficient competent and material evidence supporting the Decision. The record reflects that Petitioner approved an unqualified applicant for Medicaid without first reviewing her file, as the file was in the possession of another employee conducting a fraud investigation on the applicant. Petitioner neglected protocol when she knew or should have known the file was missing and did not send an intra-agency e-mail searching for the file or seek assistance from a supervisor. In addition to not taking efforts to locate the applicant's file, a preponderance of the evidence shows Petitioner failed to follow protocol by neglecting to use the computer systems in place to prevent this type of improper approval. Therefore, this Court finds, upon a whole record review, there was substantial and competent evidence in the record to support the agency's termination and we affirm the trial court's order as to this issue.

**E.    Denial of Motion to Submit Additional Evidence**

The Petitioner also argues that the trial court judge erred in denying Petitioner's motion to submit additional evidence pursuant to its 9 July 2014 order. A denial of a motion to submit additional evidence may only be overturned if abuse of discretion can be demonstrated. *Ritter v. Dep't of Human Res.*, 118 N.C. App. 564, 567, 455 S.E.2d 901, 903 (1995).

Pursuant to N.C. Gen. Stat. § 150B-49, a party who files a petition in the superior court may apply to the court to submit additional evidence. A court may

remand a case to obtain additional evidence only if: (1) the evidence sought is material evidence and not merely cumulative; and (2) the evidence cannot reasonably have been presented at the administrative hearing. N.C. Gen. Stat. § 150B-49. Evidence is considered cumulative if it is the same type of evidence that can be found in the record and does not provide any new revelations and thus would "probably not affect the outcome." *See Andrews v. Fulcher Tire Sales & Serv.*, 120 N.C. App. 602, 606, 463 S.E.2d 425, 428 (1995).

Petitioner first sought to introduce additional evidence in the form of witnesses to speak toward practices and proper procedure. Petitioner contends the evidence would provide new perspective from employees who left DSS before the incident. Although these witnesses might add a new perspective, there is already an abundance of evidence detailing practices and procedures in the record. Petitioner also sought to introduce witnesses to provide interpretations of rules that govern the agency. However, this evidence also already exists in the record. The trial court's denial of the motion was based upon introducing evidence that provided no new revelations and therefore was cumulative. *See Andrews*, 120 N.C. App. at 606, 364 S.E.2d at 428. Accordingly, this Court holds that the trial court did not abuse its discretion by denying Petitioner's motion to submit additional evidence. Therefore, we affirm the trial court's denial of Petitioner's motion.

**F.      Arbitrary and Capricious Decision or an Abuse of Discretion**

Finally, Petitioner contends the trial court erred in determining the agency's decision was not arbitrary or capricious or an abuse of discretion. When reviewing a decision for arbitrariness, capriciousness, or an abuse of discretion, the reviewing court conducts the whole record test. *See* N.C. Gen Stat. §§ 150B-51(b)(6), (c); *see also* N.C. Gen Stat. § 150B-51(c).

The trial court is not allowed to override a discretionary agency decision exercised in good faith and in accordance with law. *Lewis v. N.C. Dep't of Human Res.*, 92 N.C. App. 737, 740, 375 S.E.2d 712, 714 (1989). Further, decisions may only be reversed "as arbitrary or capricious if they are 'patently in bad faith' . . . or 'whimsical' in the sense that 'they indicate a lack of fair and careful consideration' or 'fail to indicate any course of reasoning and the exercise of judgment.'" *See id.* (quoting *Comm'r of Ins. v. Rate Bureau*, 300 N.C. 381, 420, 269 S.E.2d 547, 573 (1980)); *see also Ward v. Inscoe*, 166 N.C. App. 586, 595, 603 S.E.2d 393, 399 (2004).

In its order, the trial court held that "upon review of the entire record[] . . . the Court determines that the Decision was not arbitrary [nor] capricious[.]" Here, despite Petitioner's argument to the contrary, there is substantial competent evidence in the record supporting the conclusion that Petitioner's termination came about as a result of fair and careful consideration. The record demonstrates Latson was informed prior to the hearing of the ten alleged violations committed by

Petitioner. There is also evidence Latson considered Petitioner's past behavior in making his decision. Furthermore, Latson did not make the decision to terminate Petitioner until after the conference, and he made this decision without the recommendation of others. Latson determined Petitioner approved C.B.'s Medicaid benefits in violation of policy and law. Latson concluded that Petitioner's actions constituted intentional and willful insubordination. Moreover, Latson contacted the Office of State Personnel for guidance on the proper procedure. The record, as a whole, reflects that Latson gave considerable thought and consideration to his decision to terminate Petitioner. Therefore, this Court agrees the agency's decision was not arbitrary or capricious and we affirm the trial court's order as to this issue.

## V. Conclusion

For the aforementioned reasons, this Court affirms the 1 January and 22 May 2014 orders of the trial court.

AFFIRMED.

Judges STROUD and DILLON.

Report per Rule 30(e).